DONALD F. YOUNG, PLAINTIFF-RESPONDENT, v.
CITY OF PATERSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 9, 1974—Decided February 4, 1975.

172

Before Judges LORA, HANDLER and TARLETON.

*Mr. Ronald S. Fava* attorney for appellant (*Mr. Salvatore L. Borrelli* on the brief).

*Messrs. Noonan and Flynn* attorneys for respondent (*Mr. Robert J. De Groot,* of counsel and on the brief).

PER CURIAM. City of Paterson appeals from an order of the Law Division suppressing all state grand jury testimony and evidence and prohibiting its use by the City of Paterson in any departmental hearings, and directing the city to provide and proceed with a full plenary hearing under *N. J. S. A.* 40A:14–149 within ten days. The order of the Law Division has been stayed pending appeal.

On May 7, 1973 respondent Donald F. Young, a police lieutenant in Paterson, was informed by the New Jersey State Police that he was the target of an investigation concerning police corruption in the City of Paterson. He was subpoenaed to appear before the state grand jury on May 11, 1973. On that day Young refused to testify, invoking the Fifth Amendment. The trial judge's findings recite that the Attorney General offered Young immunity under *N. J. S. A.* 2A:81–17.3, an immunity "beyond the scope of public officials immunity." Young accepted on advice of counsel and agreed to cooperate with the state investigation.

In his oral opinion the trial judge further stated that Young claimed the Deputy Attorney General indicated he would not be indicted nor named in the indictment, nor would his testimony be given to the City of Paterson to be used against him in any way.

Young was again subpoenaed to appear before the state grand jury on May 30, 1973. He refused to testify, invoking his constitutional rights, and was directed to testify and granted immunity by the assignment judge of Mercer County pursuant to *N. J. S. A.* 2A:81–17.3. Young refused to comply and thereupon the court directed his incarceration for contempt. On June 4, 1973 he was suspended from the police force. Thereafter, Young appeared before the state grand jury on June 21, 1973 and testified. At a meeting of the Paterson Police and Fire Board on that date, Young was restored to full duty.

The state grand jury returned an indictment against several police officers and named Young as a nonindicted coconspirator. On June 29, 1973 Young was again suspended by the chief of police, and he demanded a hearing on the charges which was later adjourned over his objections. The trial judge's stated chronology of events indicates that the City's Police and Fire Board subpoenaed the Deputy Attorney General who had handled the matter before the state grand jury, but he declined to release any of the grand jury information until he was so ordered by a court of competent jurisdiction.

The city thereupon sought an order from the Mercer County assignment judge directing the release of Young's grand jury testimony. That court ordered the Attorney General to provide the City of Paterson with all state grand jury testimony and minutes and all documents and statements relative to the investigation, indictment or prosecution and granting of immunity of Young, but it also ordered that Young be permitted to file with the court of appropriate jurisdiction a motion to suppress the admission of

such materials. There was no indication as to the basis upon which such suppression might be sought.

Young's motion to suppress was granted by the Law Division. According to the opinion of the trial judge, he entertained the view that the immunity which Young had received was pursuant to *N. J. S. A.* 2A:81–17.3 and that it was broad enough to bar a use of any testimony or evidence derived directly or indirectly from the testimony or evidence produced by a subject person before a grand jury, in a proceeding such as involved in departmental hearings pursuant to *N. J. S. A.* 40A:14–149.

In his recital of the procedural history as outlined above, the trial judge states as a fact the offer of the Attorney General to grant immunity "beyond the scope of public officials immunity," and that the State "indicated" that Young's testimony would not be given to the City of Paterson "to be used against him in any way." However, the record, such as it is — no transcript having been made of any of the conversations leading up to and including the granting of immunity — furnishes no basis for a finding of fact that the State, through the office of the Attorney General, had indeed given or promised immunity of such breadth in exchange for Young's testimony before the Grand Jury.

In addition to the foregoing, the trial judge refers to the actual order signed by the Mercer County assignment judge granting Young immunity. That order merely recites, in the statutory language of *N. J. S. A.* 2A:81–17.3, that the testimony or evidence produced by Young "shall not be used against the said Donald Young in any proceeding or prosecution for a crime or offense concerning which the said Donald Young gave answers or produced evidence pursuant to the order of this court." On its face the order does not purport to grant Young an immunity of the breadth and extent urged by him in response to the city's appeal.

As we understand the issue, the City of Paterson argues essentially that a grant of immunity under *N. J. S. A.* 2A: 81–17.3 is restricted to process, actions or proceedings which

are criminal in nature but does not preclude the use of information obtained thereunder for the administrative removal of public employees, especially in light of *N. J. S. A.* 2A:81–17.2a1 to 17.2a5. It is asserted by the city that a grant of immunity under *N. J. S. A.* 2A:81–17.3 does not permit a public official to have his grand jury testimony concernin ghis conduct in office suppressed or quashed in a departmental hearing.

The critical language of *N. J. S. A.* 2A:81–17.3, repeated verbatim in the order granting immunity, states:

* * * After complying and if but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, such testimony or evidence, or any information directly or indirectly derived from such testimony or evidence, may not be used against the person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order.

██ A fair and realistic reading of the statute indicates that the term "proceeding" is modified or qualified by the terms "crime or offense," and that these adjectival terms apply to the same extent to the term "prosecution." Though juxtaposed with the term "prosecution," the use of the term "proceeding" would not be mere surplusage. There are proceedings of a criminal nature which are not technically prosecutions and for which a grant of immunity pursuant to statute would have significance.

Moreover, if the Legislature intended that the use of the term "proceeding" would encompass civil proceedings, as argued by Young, then surely this would have been explicitly spelled out. For example, the Model State Witness Immunity Act, after which the statute was patterned, does not employ the phrase in question but rather provides, "* * * that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order, he gave answer or produced evidence." And see, *e. g., People v. Sharp*, 107 *N. Y.* 427, 14 *N. E.* 319 (Ct. App. 1887),

which involved consideration of the provisions of § 79 of the Penal Code of New York, Title 8, chapter 1, in regard to bribery and corruption, and which provided that testimony "so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying."

Departmental disciplinary hearings are civil in nature. In our view *N. J. S. A.* 2A:81–17.3 contemplates that a person given immunity pursuant thereto would not thereby be immunized in connection with a civil departmental hearing pertaining to or involving the offense which was the subject matter of his grand jury testimony.

Young also argues that the City of Paterson should be estopped from attempting to utilize the testimony or evidence given by him to the state grand jury against himself in the disciplinary hearing before the Board of Fire and Police Commissioners because of the actions of the Attorney General. He argues he was first offered immunity under *N. J. S. A.* 2A:81–17.2a2, but when he flatly refused, the Attorney General elected to give him immunity beyond that prescribed in the public official statute and offered him immunity under the broader *N. J. S. A.* 2A:81–17.3. He further states it was agreed that he would not be named in the indictment, would be permitted within a reasonable period of time to resign as a Paterson police officer, and that the Attorney General would do what he could to aid him in the vesting of his pension rights. In this connection, it should be noted that Young did not volunteer his testimony under *N. J. S. A.* 2A:81–17.3. It was only after an order issued and his citation and incarceration for contempt that he finally testified before the grand jury.

His argument takes the tack that in accordance with the guidelines for equitable estoppel as laid down in *Feldman v. Urban Commercial, Inc.,* 70 *N. J. Super.* 463, 474–475 (Ch. Div. 1961), the City of Paterson is equitably estopped in that (1) representations were made by the Attorney General as to the scope of the immunity and as to the nonusage of any testimony he might give; (2) the facts regarding the

immunity were known to the Attorney General's office and such knowledge is imputed to the city since it is a lesser subdivision deriving its power from the State; (3) the truth of the matter was not known to him, that is, the full scope of how his statements would be used against him, (4) he was expected to rely thereon; (5) he reasonably relied on these statements to his detriment, and (6) he would not have so testified and waived his constitutional right to remain silent if he had known such statements could be used against him in a disciplinary hearing.

We have already pointed out the absence of a record foundation for the findings that the Attorney General sought and granted an immunity from civil as well as criminal proceedings. We are, moreover, disinclined to conclude that the asserted representations or promises attributed to the Attorney General were such as to cause Young to testify since his refusal to do so continued even after they were allegedly made and abated only with his incarceration for contempt.

We are of the view that the doctrine of estoppel may not be invoked in these circumstances. The doctrine of estoppel should not be used as a shield to insulate a public officer from the consequences of his testimony before a grand jury, at least for its use in a civil proceeding before his public employer conducted for the purpose of determining whether or not he has violated his trust and his fitness to continue in office.[1] Cf. State v. Abbott, 64 N. J. Super. 191 (App. Div. 1960), rev'd on other grounds 36 N. J. 63 (1961), where it was held:

---

[1] It is noted that respondent Young does not challenge the position taken by the City of Paterson that generally grand jury testimony given by a public officer may be disclosed to an investigating body if "justice so requires." Cf. In re 15th Essex County Grnad Jury, 111 N. J. Super. 564, 568 (App. Div. 1970). Accordingly, in view of the manner in which the issues on appeal are presented to us, we do not reach nor do we pass on the question of such disclosure in a context outside of the so-called immunity statutes here involved.

[T]he application of estoppel against the State is particularly inappropriate in areas such as criminal prosecution, where the welfare and safety of the community are the paramount considerations. [at 202]

And see, *e. g., Thorton v. Ridgewood,* 17 *N. J.* 499, 511 (1955); *Universal Holding Co. v. North Bergen Tp.,* 55 *N. J. Super.* 103, 111 (App. Div. 1959) cited therein.
Reversed.