642 A.2d 430

STATE OF NEW JERSEY IN THE INTEREST
OF J.S., A JUVENILE.

Superior Court of New Jersey
Chancery Division Cape May County

Decided February 10, 1994.

*Barbara Bakley,* Assistant Prosecutor of Cape May County, for the State.

*Timothy D. Gorny,* Deputy Public Defender, for the juvenile.

## *OPINION*

BATTEN, J.S.C.

This matter comes before this court, upon stipulated facts and consent of all counsel, for summary disposition as to an issue yet to be decided by any reported opinions in this state: specifically, does the September 30, 1993 pre-dispositional retraction of prior sworn testimony by the juvenile at the August 26, 1993 plea of guilt to a charge of burglary (FJ–05–657–94d) occur "... in the course of the proceeding or matter in which it was made prior to the termination of the proceeding or matter," and, as such, fall within the statutory definition of retraction as contained in

*N.J.S.A.* 2C:28–1(d)? The facts, as stipulated by counsel, are these:

## FACTS

1. On 5/19/93, Robinson's Farm Market in the Villas section of Lower Township was burglarized; cash and cigarettes of a value in excess of $500.00 were stolen;

2. On 5/28/93, the juvenile, J.S., gave a taped statement to the Lower Township Police Department, admitting his involvement in the burglary and implicating Michael, Albert and Fred Hamilton as being involved with him during the commission of the crime;

3. On 6/2/93, complaints were filed against the Hamiltons and J.S. by Lower Township Police, charging all four with burglary and theft;

4. On 7/21/93, Indictment 93–07–00267 was returned against Michael, Albert and Fred Hamilton, charging them with the burglary of Robinson's Farm Market;

5. On 8/13/93, Michael Hamilton entered a guilty plea to indictment 93–07–00267 as well as other unrelated indictments;

6. On 8/26/93, J.S. (then represented by Public Defender Jesse Deane in the absence of his regularly assigned attorney, Deputy Public Defender Timothy D. Gorny), pled guilty to the May 19, 1993 burglary and implicated, while under oath, Michael, Albert and Fred Hamilton as participants in this offense;

7. On 9/2/93, J.S. advised Public Defender Gorny that, in fact, only Michael Hamilton was with him at the time of the burglary and that Albert and Fred Hamilton were not involved. He further stated that he had implicated Albert and Fred because he felt that if he did not, the police would take him to jail;

8. On 9/3/93, Public Defender Gorney contacted Assistant Prosecutor Barbara Bakley and informed her of J.S.'s intention to retract his earlier statement as it pertained to Albert and Fred Hamilton;

9. On 9/16/93, J.S. appeared before this court and, through counsel, indicated that he wished to retract, prior to sentencing, his earlier statements involving Albert and Fred Hamilton. At that time, due to Prosecutor Bakley's unavailability, the retraction was continued to the next court date;

10. On 9/30/93, J.S. formally, while under oath, retracted his prior statement implicating Albert and Fred Hamilton. He affirmed, however, his intention to adhere to his guilty plea and he reaffirmed the involvement of Michael Hamilton in the crime;

11. On 10/5/93, indictment 93-07-00267, as it pertained to Fred Hamilton, was dismissed (other unrelated charges against Fred Hamilton were still pending prosecution);

12. On 10/5/93, the Lower Township Police Department filed Complaint # FJ-05-657-94D, charging J.S. with perjury, pursuant to *N.J.S.A.* 2C:28-1, and unsworn falsification to authorities, pursuant to *N.J.S.A.* 2C:28-3;

13. On 10/15/93, Michael Hamilton was sentenced for his role in the Robinson burglary, as well as the other offenses to which he plead guilty;

14. On 10/18/93, Albert Hamilton plead guilty to an unrelated offense and, due to the retraction by J.S., Indictment 93-07-00267 was dismissed;

15. On January 13, 1994, the Court entered a finding of guilt against J.S. as to the charge of unsworn falsification to authorities as defined in *N.J.S.A.* 2C:28-3; as to the remaining charge of perjury, the court entertained oral argument and reserved decision specifically on the heretofore undecided issue: "Does the attempted retraction, offered subsequent to a plea of guilty yet prior to disposition of the juvenile (or, by analogy, prior to sentencing of a defendant) occur within the same 'proceeding or matter in which it was made prior to the termination of the proceeding or matter'?" *N.J.S.A.* 2C:28-1(d).

### DECISION

The affirmative defense of retraction is defined, per *N.J.S.A.* 2C:28–1(d) as follows: "It is an affirmative defense under this section that the actor retracted the falsification in the course of the proceeding or matter in which it was made prior to the termination of the proceeding or matter without having caused irreparable harm to any party." In a general sense, retraction can only occur in the same "proceeding or matter" in which the perjurious comments were offered and only then in the absence of irreparable harm to any party thereto. Here, the State argues that the attempted retraction occurred subsequent to entry of the plea of guilt to the charge of burglary and, as such, was not offered "... in the course of the proceeding or matter in which it was made." *N.J.S.A.* 2C:28–1(d); the retraction thus being untimely, the affirmative defense is not available to the juvenile now charged with perjury. The defense, on the other hand, argues in favor of a more comprehensive interpretation of the phrase, "proceeding or matter", asserting the attempted retraction to have been offered prior to disposition (i.e., sentencing) and, as such, "in the course of the proceeding or matter in which it was made"; the retraction thus being timely, the affirmative defense of retraction precludes prosecution of the juvenile for perjury per *N.J.S.A.* 2C:28–1. To decide this issue, the court must interpret, for the first time, the scope of the phrase, "proceeding or matter", generally, and the terms, "proceeding" and "matter," specifically.

Counsel for the defendant argues, correctly, that the terminology utilized in the statute is "capable of two interpretations." Defense counsel argues that the "proceeding" of September 30, 1993 (scheduled specially for purposes of the retraction of prior testimony that wrongly incriminated other defendants) was yet "the proceeding or matter in which it was made" as contemplated by *N.J.S.A.* 2C:28–1(d) and, as such, avails the defendant of the affirmative defense of retraction in this perjury prosecution. In support of this position, the defense cites the definition of "pro-

ceeding" as contained in *Black's Law Dictionary* 1083 (5th ed. 1979):

> The word may be used synonymously with "action" or "suit" to describe the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party. The proceedings of a suit embrace all matters that occur in its progress judicially.

Defense counsel also cites the Model Jury Charge for "official proceeding," noting its similar interpretation:

> The term official proceeding is defined as a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency or official authorized to take evidence, under oath, including any referee, hearing examiner, commissioner, notary or other person taking testimony or deposition in connection with any such proceeding. The term official proceeding is intended to include any type of proceeding where the taking of testimony under oath is authorized.

Defense counsel notes, in his brief, however, that: " . . . once again, the term proceeding or matter is left open as to whether it deals with one particular judicial event on one day or whether it deals with the case or proceeding taken as a whole from start to ultimate conclusion." That ambiguity, argues to the defense, should be resolved consistent with the 1971 commentary to *N.J.S.A.* 2C:28–1(d):

> "Those who do recognize the defense do so in the hope of providing an incentive for the witness to correct his misstatement and *tell the truth before the end of the proceeding* [emphasis added]."

The State, on the other hand, argues in support of the more narrow interpretation of the term "proceeding or matter," asserting its position that the failure of the juvenile to retract his false statement on August 26th, 1993 (the date the statements were made), or, if not on the same day, at least within the same procedural setting (i.e., the entry of a plea), a fortiori renders any subsequent occasion of attempted retraction a new or different "proceeding or matter," thus denying the defendant the affirmative defense of retraction. *N.J.S.A.* 2C:28–1(d). The State cites *State v. Bielecki,* 196 *N.J.Super.* 332, 482 *A.*2d 527 (App.Div.1984) as authority for this position. In this decision, however, the Appellate Division did not address the precise issue presently

before this court. On the contrary, the court in *Bielecki, supra* "affirm[ed] for the reasons stated by Judge Muir and our additional rejection of the several grounds on appeal." 196 *N.J.Super.* 332, 336, 482 *A*.2d 527. The only portion of the trial court opinion thereupon noted was Judge Muir's conclusion that "It would be incongruous [sic] to suggest that a public official, a Chief of Police, a person who is sworn to uphold the law, the Chief law enforcement officer of Mount Olive Township, can admit to perjury, recant it and then be immune from any kind of sanction." *Id.* at 335, 482 *A*.2d 527.

That holding by Judge Muir did not pertain, however, to the interpretation of "proceeding or matter" within the context of *N.J.S.A.* 2C:28–1(d) or the application of that phrase and its legislative intendment to the adjudication of the timeliness of attempted retractions. On the contrary, Judge Muir's comment was a response to that defendant's contention that "... the statutory defense of retraction to the crimes of perjury and false swearing, *N.J.S.A.* 2C:28–1 and 2, precluded [the defendant's] removal from office under *N.J.S.A.* 2A:81–17.2a(3)." Judge Muir held, and the Appellate Division affirmed, that the defense of retraction was *not* applicable to the removal statute, thus Judge Muir's reference to "any kind of sanction" as opposed to the more specific offense of perjury or false swearing. *N.J.S.A.* 2C:28–1, 2. The Appellate Division further noted the inapplicability of the defense of retraction to a civil removal proceeding:

Retraction may be characterized, in a criminal law context, as a *nonexculpatory* public policy defense. *See* Robinson "Criminal Law Defenses: A Systematic Analysis", 82 *Columbia L.Review* 199, 230–231 (1982). The removal statute, however, is a civil proceeding, and the legislature has not provided that a retraction will vitiate the admission of the misdemeanor of false swearing.... In short, the schemes of the civil removal, criminal, and forfeiture statutes are different. *There is no provision that, and no reason why, retraction must be available as a defense to removal* under *N.J.S.A.* 2A:81–17.2a3.

[*Id.* at 337, 482 *A*.2d 527 (emphasis added).]

Interestingly, the periods of time between the utterance of false statements and attempted retraction by Police Chief Bieleck

(April 13 to June 8, 1983) and the juvenile in this action (August 26 to September 30, 1993) are at significant variance.

There being neither statutes nor reported case law in this State as define the phrase, "proceeding or matter", this court is left to the application of usual standards of statutory construction and reference to the few reported decisions of relevance. In this regard, statutes and the words that comprise them, must be interpreted in light of common law antecedents. *Johnson Machinery Co. Inc. v. Manville Sales Corp.*, 248 *N.J.Super.* 285, 306, 590 *A.2d* 1206 (App.Div.1991); *Magierowski v. Buckley,* 39 *N.J.Super.* 534, 554, 121 *A.2d* 749 (App.Div.1956) (quoting *Yanow v. Seven Oaks Park, Inc.*, 11 *N.J.* 341, 350, 94 *A.2d* 482 (1953)): "A legislative body in this State is presumed to be familiar not only with the statutory law of the State, but also with the common law." Our statutes do not define "proceeding" or a "matter," in either a civil or criminal context. Where, as here, the applicable statute does not define the offense or crime, the definition must be obtained from the common law. *State v. Taylor,* 46 *N.J.* 316, 334, 217 *A.2d* 1 (1966). This principle applies equally to ascertainment of meaning as to words or phrases within the statute, though penal or criminal statutes "are to be strictly read to avoid penalties by construction." *State v. Brown,* 22 *N.J.* 405, 126 *A.2d* 161 (1956) (citing with approval *United States v. Scharton,* 285 *U.S.* 518, 52 S.Ct. 416, 76 L.Ed. 917 (1932): "the words of the enactment are to be accorded a rational measuring in harmony with the obvious interest and purpose of the law").

There is little common law in this jurisdiction as relates to the definition of "matter"; few cases have addressed the common law definition of "proceeding." *Green v. Passaic County Board of Taxation,* 131 *N.J.L.* 13, 34 *A.2d* 245 (1943) (the filing of a complaint by a municipality seeking to have omitted property added to the tax list pursuant to *N.J.S.* 54:3–20 constituted a "proceeding"); *Young v. City of Paterson,* 132 *N.J.Super.* 170, 333 *A.2d* 32 (App.Div.1975) (the term "proceeding," as contained in a criminal statute, *N.J.S.A.* 2A:81–17.3, was "modified or qualified

by the terms 'crime or offense' ...". In *Young, supra,* the Appellate Division noted: "the use of the term 'proceeding' would not be mere surplusage. There are proceedings of a criminal nature which are not technically prosecutions." 132 *N.J.Super.* at 176, 333 *A.*2d 32. The court also noted, interestingly, that the term, "matter", as juxtaposed to "proceeding" in *N.J.S.A.* 2C:28–1(d), was not superfluous and enhanced the effect of the Model State Witness Immunity Act. 132 *N.J.Super.* at 176, 333 *A.*2d 32.

As such, the terms "proceeding" and "matter" are to be interpreted and construed as distinct from one other; each may pertain to matters criminal or civil, though the term "matter" enjoys a more general connotation. *Young, supra.*

The term "matter" has been the subject of just a single reported case in this jurisdiction: *Watkinson v. Watkinson,* 67 *N.J.Eq.* 142, 58 *A.* 384 (1904) (holding that marriage is such "a matter or thing" within the court's territorial jurisdiction as to which a bona fide resident may afford a court jurisdiction over an absent spouse by exterritorial service). Case law deriving from other states has construed "matter" more generally than the term "proceeding." *State v. Luper,* 95 *P.* 811, 813 (Or.1908) (holding that an information charging that an accused swore to "facts" stated in a complaint is not defective as charging the verification of the statements only; the term "facts" as so used means "matter" or "statements"); *Parker v. Bower,* 98 *Vt.* 115, 126 *A.* 522 (1924) (holding that the test of whether an amendment sets up a new cause of action is whether the proposed amendment is a different "matter" or the same "matter" more fully or differently laid, the term "matter" referring to substantial facts forming the basis of plaintiff's claim and not those originally alleged); *Trautwein v. Bozzo,* 35 *N.J.Super.* 270, 113 A.2d 848 (Ch.Div.1955), *aff'd* 39 *N.J.Super.* 267, 268, 120 A.2d 788 (App.Div.1956) (holding that post-trial assertion of the doctrine of unclean hands, by a defendant, adversely to the cause of action by the plaintiff's, is a "*matter* constituting an avoidance or affirmative defense," to be averred within the import of the Rules of Court and may be

recognized, *sua sponte,* at trial or on appeal when "justified by the circumstances" in the interests of justice and public policy). The Missouri Court of Appeals, in *State v. Williams,* 519 *S.W.*2d 576, 578 (Mo.Ct.App.1975), held that the term, "matter," referred to in a statute providing that an accused may testify in his own behalf and shall be liable to cross-examination, means "the things he testifies about."

By contrast, the term "proceeding" is given different meanings according to the different contexts in which it is used; it is not a technical term, has been construed more generally than the term "action," and has been interpreted as pertaining to any act, measure, step or all steps in a course taken in conducting criminal litigation. *Sigmon v. Commonwealth,* 200 *Va.* 258, 105 *S.E.*2d 171, 178 (1958). As ordinarily used, the term is construed to include all methods of invoking the action of the courts (*State v. Ventola,* 122 *Conn.* 635, 191 *A.* 726 (1937)); and is generally applicable to any step taken by a suitor to obtain the interposition or action of a court (*Re. Lamm's Estate,* 246 *Iowa* 300, 67 *N.W.*2d 613 (1954)). Standing alone, the term has been deemed sufficiently general to cover each step or all steps in a criminal action from commencement to final termination *Commonwealth v. Dean,* 172 *Pa.Super.* 415, 94 *A.*2d 59, 60 (1953).

According to the general acceptance of the term, a proceeding includes the form and matter of conducting judicial business before a court or judicial officer, regular and ordinary proceedings in form of law, and all possible steps in an action from its institution to the execution of judgment, but more particularly, an application to a court of justice, however made, for enforcement of rights, relief, redress of injuries, damages, or any remedial object. *Greenleaf v. Minneapolis, St. Paul & Ste. Marie Railway Co.,* 30 *N.D.* 112, 151 *N.W.* 879 (1915). The term has been more generally defined as: "the form in which actions are brought and defended, the manner of intervening and suits of conducting them, the motive deciding them, of opposing judgments, and of executing." *Bouvier's Law Dic.,* quoted in *Erwin v. U.S.,* 37 *F.* 470 (D.C.Ga.

1889). A proceeding has also been defined as some act or acts done in furtherance of the enforcement of an existing right, real or imaginary, and may be by petition in the court of competent jurisdiction or by a summary remedy prescribed by statute. *Coca Cola Co. v. Atlanta,* 152 *Ga.* 558, 110 *S.E.* 730 (1922) cert. den. 259 *U.S.* 581, 42 *S.Ct.* 585, 66 *L.Ed.* 1074 (1922); *Zangerle v. Evatt,* 139 *Ohio St.* 563, 23 O.O. 52, 41 *N.E.*2d 369 (1942). Case law from other jurisdictions distinguishes between "ordinary proceedings," contemplative of the regular and usual mode of carrying on a suit by due course at common law (*Erwin v. U.S., supra*) and "special proceedings," for which provision is made in many statutes and by which civil remedies beyond ordinary actions are provided. *Gwinn v. Melvin,* 9 *Idaho* 202, 72 *P.* 961 (1903); *Hazelton–Moffit Special School District v. Ward,* 107 *N.W.*2d 636 (N.D.1961). The distinction between ordinary and special proceedings bears significance not just in the parameters of procedural in due process but the scope of substantive remedies available as to each.

A "criminal proceeding" has been defined as one instituted and prosecuted by the state for the punishment of crime (*State v. Cossello,* 61 *Conn.* 497, 500, 23 *A.* 868 (1892)), as an action instituted and prosecuted by the state or sovereign proven in its own name against a person who is accused of a crime, to punish him or her therefor (*In re Leslie,* 119 *F.* 406 (D.C.N.Y.)), and as any step taken in the progress of a criminal action (*Hopewell v. State,* 22 *Ind.App.* 489, 54 *N.E.* 127 (1899). So, the phrase means some authorized step taken before a judicial tribunal against some person or persons charged with the violation of some provision of the criminal law. *Gibson v. County of Sacramento,* 37 *Cal.App.* 523, 174 *P.* 935; *Best v. State Bar of Cal.,* 57 *Cal.*2d 633, 21 *Cal.Rptr.* 589, 371 *P.*2d 325 (1962); *Zitny v. State Bar of Cal.,* 64 *Cal.*2d 787, 51 *Cal.Rptr.* 825, 415 *P.*2d 521 (1966).

▉ Given the paucity of reported New Jersey case law, the general definitional applicability of the term "matter," and the historical construction of the term "proceeding" to all stages of a criminal prosecution from grand jury presentment through sen-

tencing, it is clear that the comments of the juvenile at the September 30, 1993 hearing were offered within the same "proceeding" as the false statements given by the juvenile, under oath, on August 26, 1993. A *fortiori*, the attempted retraction was also made within the same "matter." In *Commonwealth v. Dean*, *supra.*, the Superior Court of Pennsylvania specifically held that:

> Without question, the word "proceeding", standing alone, is broad enough to cover each step or all steps in a criminal action from commencement to final termination. The inquiry is, however, at what *stage of the proceeding* did the legislature intend that a defendant should file his motion for a blood grouping test. The answer, it seems to us, is perfectly obvious. The purpose of compelling the mother and child to submit to such tests is to provide the defendant with results which may, if they exculpate him, "be received in evidence". That purpose could be accomplished only if the tests were made and the results available at the trial. It is certain that the legislature never intended to grant the defendant the right to reopen the trial 38 days after a verdict and sentence entered thereon.

[172 *Pa.Super.* 415, 94 *A.2d* at 60.]

That case pertained to a defendant's untimely application for leave to allow the submission by the parties to blood grouping tests in an attempt to defend a paternity action. The petition for leave was filed thirty-eight days subsequent to final judgment; the court noted that, final judgment having entered, the application had not been prosecuted within the same "proceeding," rejecting the defendant's argument that the legislature intended the term "proceeding" to include all matters through final disposition by an appellate court. The attempted retraction by the juvenile occurred **prior to disposition,** the single event which the foregoing treatise definitions, foreign reported opinions and New Jersey common law suggest are the determinative indicia of the termination of a proceeding. Even the less rigid concept of "matter" as developed in *State v. Williams, supra* ("matter" refers to "the things he testifies about"), resolves this inquiry in favor of the defendant, given the pre-disposition timing of the attempted retraction and the relevance of the false statements to the very prosecution in which the statements had been uttered.

As such, this court holds that post-plea, pre-disposition retraction of false testimony uttered at the time of entry of the plea

occurs "in the course of the proceeding or matter in which it was made prior to the termination of the proceeding or matter" and as such avails the defendant of the affirmative statutory defense of retraction per *N.J.S.A.* 2C:28–1(d). Having so decided, the court need not address the remaining issue as to whether indictment of the individuals wrongly implicated by the juvenile constitutes "irreparable harm to any party"; *N.J.S.A.* 2C:28–1(d).

The defendant is found not guilty of perjury.