968 A.2d 120

**Richard L. KRAMER**

v.

**LIBERTY PROPERTY TRUST f/k/a Republic Property Trust.**

**No. 23, Sept. Term, 2008.**

Court of Appeals of Maryland.

March 23, 2009.

**2**

4

Stephen P. Sorenson (Paul Martin Wolff, Williams & Connolly LLP, Washington, DC), on brief, for Appellant.

Mark E. Nagle (Jennifer D. Chapman, Troutman Sanders LLP, Washington, DC), on brief, for Appellee.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, Judge.

Section 2–418 of the Corporations and Associations Article, Md.Code (1975, 2007 Repl.Vol.), authorizes a corporation to indemnify or advance expenses to a director who is a "party" to a "proceeding." Under the statute, a " '[p]arty' includes a person who was, is, or is threatened to be made a named defendant or respondent in a proceeding." *Id.* § 2–418(a)(6). " 'Proceeding' means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative." *Id.* § 2–418(a)(7). In this advancement case, pursuant to the governing documents of Republic Property Trust ("Republic"), we must determine whether the expenses incurred by Richard L. Kramer, Republic's former Chairman and trustee, following an internal investigation, and in response to a recommendation that he either resign or face "further action," were incurred in connection with a "proceeding" under § 2–418. If so, then we must determine whether Kramer was made a "party" to the "proceeding" by reason of his status as a trustee of Republic.

Kramer, the appellant, contends that he incurred his expenses in a "proceeding" within the meaning of § 2–418. Specifically, he asserts, "[I]t is well-established that adversarial actions taken by companies against their officers or directors constitute 'proceedings' that trigger the right to mandatory advancement." (Appellant's brief at 16–17.) Kramer further contends that he was made a "party" to the "proceed-

ing" by reason of his status as a trustee of Republic, because "he was the express target of the efforts to investigate his conduct and oust him from his positions as Chairman and Trustee of Republic." (Appellant's brief at 25.) Liberty Property Trust ("Liberty"), the appellee and Republic's successor-in-interest, disagrees with Kramer, contending that there was no "proceeding" to which Kramer was made a "party" by reason of his status as a trustee.

We hold that a "proceeding" within the meaning of § 2–418 is an actual or threatened adjudicative or administrative process, or any stage of either process, including an investigation. The term "proceeding" does not, however, comprise a corporation's internal governance functions, such as the removal of a director or officer for cause. Although the internal investigation in this case was a "proceeding" under § 2–418, it was not one to which Kramer was made a "party" by reason of his status as a trustee of Republic. The investigation focused upon Kramer, not because of his status as a trustee of Republic, but because of his involvement with another entity, Republic Properties Corporation ("RPC"). Furthermore, Republic's actions following the internal investigation, during which it considered the recommendation that Kramer either resign or face "further action," did not constitute a "proceeding" within the meaning of § 2–418. Therefore, Kramer is not entitled an advancement, and we shall affirm the judgment of the Circuit Court for Baltimore City.

## I.

### A.

#### Republic's Governing Documents

Republic was a Maryland real estate investment trust ("REIT") engaged in the acquisition, development, ownership, management, control, and disposition of real property. During the pendency of the instant litigation, Republic merged with Liberty and ceased to exist. Liberty assumed Republic's

liabilities, including the liabilities to which Republic committed itself through its governing documents.

Republic's governing documents, its Declaration of Trust and Bylaws, contained, among other things, a commitment to indemnify its trustees for certain expenses incurred in their service as trustees. Included was the imperative that Republic advance to its trustees such expenses as incurred. Article IX, § 9.3 ("Indemnification") of the Declaration of Trust provided:

> To the maximum extent permitted by Maryland law in effect from time to time, and in accordance with applicable provisions of the Bylaws, the Trust shall indemnify ... any present or former Trustee or officer who has been successful in the defense of a proceeding to which he or she was made a party by reason of service in such capacity, against reasonable expenses incurred by the Trustee or officer in connection with the proceeding and shall pay or reimburse, *in advance of [the] final disposition of the proceeding,* such reasonable expenses.

(Emphasis added.) Likewise, Article XI ("Indemnification and Advance of Expenses") of the Bylaws provided, in pertinent part:

> To the maximum extent permitted by Maryland law in effect from time to time, the Trust shall indemnify ... any Trustee or officer ... who has been successful, on the merits or otherwise, in the defense of a proceeding to which he or she was made a party by reason of service in such capacity, against reasonable expenses incurred by him or her in connection with the proceeding.... In addition, *the Trust shall pay or reimburse, as incurred, in advance of [the] final disposition of a proceeding, reasonable expenses incurred by a Trustee or officer or former Trustee or officer made a party to a proceeding by reason of such status,* provided that the Trust shall have received: (i) a written affirmation by the Trustee or officer of his or her good faith belief that he or she has met the applicable standard of conduct necessary for indemnification by the Trust as au-

thorized by these Bylaws and (ii) a written undertaking by or on his or her behalf to repay the amount paid or reimbursed by the Trust if it shall ultimately be determined that the applicable standard of conduct was not met. . . .

\* \* \* \*

Any indemnification or payment or reimbursement of the expenses permitted by these Bylaws shall be furnished in accordance with the procedures provided for indemnification or payment or reimbursement of expenses, as the case may be, under Section 2–418 of the MGCL for directors of Maryland Corporations.[1]

(Emphasis added.)

In addition to providing indemnification and advancement rights, Republic's Declaration of Trust set forth certain procedures with respect to matters of corporate governance. Under Article VIII, § 8.2 ("Voting Rights"), the shareholders of Republic were to elect its trustees. Pursuant to Article V, § 5.3 ("Resignation, Removal or Death"), a trustee of Republic could only be removed for cause, by a two-thirds vote of the shareholders.

---

1. *See* Md.Code (1975, 2007 Repl.Vol.), § 2–418 ("Indemnification of directors, officers, employees, and agents"). Section 2–418 provides, in pertinent part:

§ 2–418. **Indemnification of directors, officers, employees, and agents.**

(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

\* \* \* \*

(6) "Party" includes a person who was, is, or is threatened to be made a named defendant or respondent in a proceeding.

(7) "Proceeding" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative.

\* \* \* \*

(f) *Payment of expenses in advance of final disposition of action.*—(1) Reasonable expenses incurred by a director who is a party to a proceeding may be paid or reimbursed by the corporation in advance of the final disposition of the proceeding. . . .

## B.

### Kramer's Request for an Advancement

Richard L. Kramer was the Chairman of the Board of Trustees and a trustee of Republic. Steven A. Grigg served as Republic's President and Chief Development Officer. In addition to their positions with Republic, Kramer and Grigg co-owned RPC, an affiliate of Republic engaged in real estate development in the City of West Palm Beach, Florida.

The events pertinent to this case began in October of 2004, when the West Palm Beach Community Redevelopment Agency ("CRA") voted to approve a Professional Services Agreement ("PSA") between the City and RPC for a project known as "City Center." Subsequently, in November of that year, RPC entered into a consulting agreement with West Palm Beach City Commissioner Raymond Liberti, who also served on the CRA. Although Kramer was active in engaging the assistance of Commissioner Liberti, it was Grigg who, on behalf of RPC, executed the consulting agreement and two of the three extensions thereto.

After Commissioner Liberti entered into the consulting arrangement with RPC, the CRA voted to amend the PSA on three occasions. The first amendment inured to the benefit of RPC. The second and third amendments inured to the benefit of Republic because, on December 19, 2005, the CRA voted to approve an assignment of the PSA from RPC to Republic.[2]

In May of 2006, federal prosecutors charged Commissioner Liberti with fraud and corruption in abuse of his elected position. Although these charges had nothing to do with Republic or RPC, the local press revealed that RPC paid

---

**2.** On December 20, 2005, Republic completed its initial public offering ("IPO") of securities. Republic was formed on July 19, 2005. That day, Republic formed Republic Property Limited Partnership ("RPLP"), a Delaware limited partnership through which it conducted substantially all of its operations. In connection with Republic's IPO, RPLP entered into an agreement with RPC whereby RPC assigned its interest in the City Center PSA to RPLP in exchange for 100,234 RPLP partnership units.

consulting fees to Liberti while he was voting on matters affecting RPC. The press also reported that federal and State prosecutors knew about RPC's consulting arrangement with Commissioner Liberti and that State prosecutors planned to conduct a grand jury investigation into Liberti's dealings with RPC.

In response to the potential criminal investigation into RPC's dealings with Commissioner Liberti, Republic's Audit Committee engaged the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Audit Committee Counsel") to investigate the extent of Republic's involvement. According to Audit Committee Counsel, its "focus" of the investigation consisted of the following:

> (i) assessing the nature of the dealings between Commissioner Liberti and Mr. Grigg in connection with the City Center project and other projects in Florida, (ii) the legality of the consulting agreements entered [into] between Commissioner Liberti and Mr. Grigg, (iii) who associated with [Republic] knew about the consulting agreements and when, (iv) whether [Republic] had a duty to disclose the consulting agreements to the City of West Palm Beach or to others, and (v) whether [Republic] contravened any laws in connection with the consulting agreements.

Audit Committee Counsel also examined "whether (i) Mr. Grigg's conduct in Florida ... provide[d] a basis for [Republic] to terminate Mr. Grigg for cause, and (ii) any other facts and circumstances learned in the course of the investigation suggest[ing] violations of law, contract, and corporate governance or ethical standards." As such, Republic recommended that Grigg take a leave of absence during the investigation and be prohibited from accessing company e-mail and materials.

Beginning in July of 2006, Audit Committee Counsel reviewed more than 40,000 documents and interviewed several persons, including Kramer, Grigg, Commissioner Liberti, and Robert Sanders, an attorney who allegedly suggested to Grigg that RPC hire Commissioner Liberti as a paid consultant. Kramer did not retain private counsel during the internal investigation. He cooperated initially, providing reasonable

access to RPC documents. In his interview with Audit Committee Counsel, however, Kramer sought to cut short questioning. In addition, in the course of attorney Robert Sanders's interview with Audit Committee Counsel, Kramer placed extensive limitations on Sanders's ability to answer questions. The most significant of the subjects that Audit Committee Counsel could not explore were the consulting agreements between Commissioner Liberti and RPC. Eventually, Kramer began to question and challenge the authority of Republic's Audit Committee to conduct the investigation, appearing at a meeting of the Audit Committee and insisting that "this folly must stop now."

On October 31, 2006, Audit Committee Counsel issued a report detailing the findings of its internal investigation and providing certain recommendations. Of particular importance, Audit Committee Counsel found that Commissioner Liberti "cast at least eight votes affecting RPC and/or Republic." In addition, Audit Committee Counsel recommended that Grigg's employment with Republic be terminated for cause. Pertaining to Kramer, Audit Committee Counsel observed that Kramer questioned vigorously, in several e-mails, Grigg's competence and "whether [Grigg] should play any role in [Republic]." While "offer[ing] no prediction as to whether federal or state prosecutors w[ould] bring charges in connection with Commissioner Liberti's dealings with RPC, Mr. Grigg, and Richard Kramer," Audit Committee Counsel also opined that Kramer's actions could possibly serve as the basis for a criminal obstruction of justice charge against him.[3] Thus, Audit Committee Counsel concluded that Kramer's con-

---

3. Specifically, Audit Committee Counsel noted:

It is an open question whether Richard Kramer's active efforts to restrict and limit the investigation and access to relevant information, considered in combination with the detailed *Upjohn* warning given to and read by Richard Kramer and his admitted knowledge of a federal criminal investigation, could or may constitute obstruction of justice under 18 U.S.C. § 1512. (*See, e.g., United States v. Zar,* Cr. No. 04–331(ILG) (E.D.N.Y. Criminal Information) filed April 8, 2004). We do not express an opinion as to this issue because the only cases applying this theory to date were three criminal informations in

duct during the investigation did not reflect an appropriate "tone at the top." As such, Audit Committee Counsel recommended that Republic seek the voluntary resignation of Kramer as Chairman and member of the Board of Trustees; if Kramer would not resign, then Audit Committee Counsel recommended that the Board "evaluate, weighing all material considerations, whether to take further action."

In response to the recommendations of Audit Committee Counsel, Kramer retained the law firm of Williams & Connolly, L.L.P. to "defend" him. Also in response, on November 30, 2006, Republic's Board held a special meeting to, among other things, remove Kramer from office. The Board adjourned the meeting without taking such action, however.

Following the November 30 board meeting, Republic's outside counsel agreed that Kramer would be able to appear before the Audit Committee on January 8, 2007, to respond to the recommendations of Audit Committee Counsel. Kramer requested that his attorneys be provided with the documents that Audit Committee Counsel relied upon in concluding that he should be removed from office. Republic's outside counsel agreed initially to produce the documents but recanted soon thereafter. Also around this time, on December 11, 2006, on the basis of Republic's governing documents, Kramer requested that Republic advance to Kramer the "legal expenses incurred by [him] in connection with the proceeding [Republic] ha[d] begun against [him] as a Trustee of [Republic]." [4] With this request, Kramer submitted his attorneys' time records,[5]

---

connection with Computer Associates, which resulted in guilty pleas by the three charged executives. (*E.g., id.*)

4. In so doing, Kramer further stated:

Lest there be any doubt that [Republic], through its investigative actions and challenges to my status as a Trustee, has begun a proceeding against me, I would refer you to the definition of proceeding in Section 2–418 of the Maryland General Corporation Law: "threatened, pending or completed action, suit or proceeding, whether civil criminal, administrative or investigative."

5. According to the materials submitted to this Court, Kramer's attorneys began working on the instant matter on October 31, 2006. On

an affirmation stating that he had met the applicable standard of conduct necessary for indemnification, and an undertaking promising to repay the amount advanced if it was later determined that the standard of conduct was not met. Republic denied Kramer's request, which is the subject of the instant lawsuit.

On January 1, 2007, Republic's General Counsel wrote to Kramer that "a reckoning is coming upon Grigg, and you can get yourself caught up in it, we can join forces in support of it or you can get out of the way." Kramer never appeared at the January 8, 2007, meeting of Republic's Audit Committee, and on January 18, Republic's outside counsel agreed finally to provide Kramer with the documents that Kramer requested. Only a small fraction of the documents were provided, however, and Republic's outside counsel informed Kramer that no other documents would be produced later. Furthermore, Republic's outside counsel delivered to Kramer's attorneys the following ultimatum:

> The Audit Committee does not intend to allow further delay. If you would like to schedule a meeting before the end of the month for your client to address the conclusions of [Audit Committee Counsel's] report that concern him (i.e., his failure to cooperate with the investigation), please let me know. If your client does not choose to avail himself of this opportunity, then the Audit Committee will proceed accordingly.

Kramer never appeared before the Audit Committee, and on May 3, 2007, in the Circuit Court for Baltimore City, Kramer filed a complaint against Republic to collect the expenses for which advancement was denied. On October 4, by way of the Republic/Liberty merger, Republic ceased to exist, and Kramer no longer held a position to defend. On November 2, the Circuit Court heard argument on the parties' cross-motions for summary judgment. Deciding that there

---

that day, their duties were limited to reviewing Audit Committee Counsel's report. Thereafter, their work consisted of corresponding with Republic and its outside counsel, and the instant lawsuit.

was no "proceeding" that triggered Kramer's right to an advancement under Republic's Bylaws, the court stated:

> The Court has before it a motion for summary judgment as filed by Plaintiff, basically saying that it was a threatened or actual proceeding and there was right of Plaintiff Kramer, to have—to seek counsel, have counsel, in those matters.
>
> The defendant, Republic Property Trust, has, in fact, argued in a cross-motion, motion to dismiss, in the alternative, a motion for summary judgment, stating that all of these matters are internal and there was no actual proceeding or no definable proceeding or no proceeding within the meaning of 2–418.
>
> That under the circumstances, the Court recognizes the argument. It appears that the real issues here was [sic] around whether or not Plaintiff would remain as a member of the Board, as well as, in his position as chairman. It appears very clear, from the arguments made and the affidavits and other information submitted, that the defenses by Kramer was [sic] over whether or not he would be able to defend his position and remain as chairman and member of the Board.
>
> It is the Court's finding, that after argument and review of the facts and circumstance[s], the cases cited—and we do appreciate your argument as to *Gentile*[6] and your interpretations on both sides.
>
> This Court does find ... that there was not a proceeding within the actual meaning of the statute and that these were internal matters.
>
> Defendants motion for summary judgment is hereby granted. Plaintiff's motion for summary judgment is hereby denied.

---

**6.** *See Gentile v. SinglePoint Financial, Inc.,* 787 A.2d 102 (Del.Ch.2001) (holding that, under the company's bylaws, a former officer and director was entitled to advancement for expenses incurred in a "Proceeding" comprising an internal investigation and subsequent lawsuit), *aff'd,* 788 A.2d 111 (Del.2001).

Kramer appealed the order of the Circuit Court to the Court of Special Appeals. We issued a writ of certiorari prior to any proceedings in the intermediate appellate court. For our review are two questions:

(1) Did the trial court err in concluding that an action to remove a trustee from the board of a Maryland "REIT" for an alleged breach of fiduciary duty was not a "proceeding" within the meaning of Section 2–418 of the Maryland Code?

(2) Did the trial court err in denying appellant's motion for summary judgment where he "was made a party to a proceeding by reason of such status" as a trustee and officer?

## II.

Section 2–418 of the Corporations and Associations Article authorizes a corporation to indemnify or advance expenses to a director who is a "party" to a "proceeding." Authorizing advancement is subsection (f), which provides:

(f). *Payment of expenses in advance of final disposition of action.*—(1) Reasonable expenses incurred by a director who is a party to a proceeding may be paid or reimbursed by the corporation in advance of the final disposition of the proceeding upon receipt by the corporation of:

(i) A written affirmation by the director of the director's good faith belief that the standard of conduct necessary for indemnification by the corporation as authorized in this section has been met; and

(ii) A written undertaking by or on behalf of the director to repay the amount if it shall ultimately be determined that the standard of conduct has not been met.

(2) The undertaking required by paragraph (1)(ii) of this subsection shall be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make the repayment.

(3) Payments under this subsection shall be made as provided by the charter, bylaws, or contract or as specified in subsection (e) of this section.[7]

Md.Code (1975, 2007 Repl.Vol.), § 2–418(f). Regarding the difference between advancement and indemnification:

> Indemnification is the right to be reimbursed for all out of pocket expenses and losses caused by an underlying claim. The right is typically subject to a requirement that the indemnitee have acted in good faith and in a manner that he reasonably believed was in the best interests of the company. As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit. Advancement, by contrast, is a right whereby a *potential* indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct. A grant of advancement rights is essentially a decision to advance credit to the company's officers and directors because the officer or director must repay all sums advanced to him if it is later determined that he is not entitled to be indemnified.

*Majkowski v. American Imaging Mgmt. Servs.*, 913 A.2d 572, 586–87 (Del.Ch.2006) (footnotes omitted) (emphasis in original). Nevertheless, the authorization to indemnify or advance expenses under § 2–418 depends, generally, upon whether the expenses to be reimbursed or advanced were (or will be) incurred in a "proceeding" to which the indemnitee or potential indemnitee was made a "party."

Section 2–418 provides that the term " '[p]arty' includes a person who was, is, or is threatened to be made a named defendant or respondent in a proceeding." Md.Code (1975,

---

7. Section 2–418(e) is inapplicable in this case.

2007 Repl.Vol.), § 2–418(a)(6). " 'Proceeding' means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative." *Id.* § 2–418(a)(7).

The requirement that one be a "party" to a "proceeding" under § 2–418 to obtain an advancement was incorporated into the governing documents of Republic. Republic's Bylaws provided, in pertinent part:

### Article XI

#### Indemnification and Advancement of Expenses

To the maximum extent permitted by Maryland law in effect from time to time, the Trust shall indemnify . . . any Trustee or officer . . . who has been successful, on the merits or otherwise, in the defense of a proceeding to which he or she was made a party by reason of service in such capacity, against reasonable expenses incurred by him or her in connection with the proceeding. . . . In addition, *the Trust shall pay or reimburse, as incurred, in advance of [the] final disposition of a proceeding, reasonable expenses incurred by a Trustee or officer or former Trustee or officer made a party to a proceeding by reason of such status,* provided that the Trust shall have received: (i) a written affirmation by the Trustee or officer of his or her good faith belief that he or she has met the applicable standard of conduct necessary for indemnification by the Trust as authorized by these Bylaws and (ii) a written undertaking by or on his or her behalf to repay the amount paid or reimbursed by the Trust if it shall ultimately be determined that the applicable standard of conduct was not met. . . .

\* \* \* \*

Any indemnification or payment or reimbursement of the expenses permitted by these Bylaws shall be furnished in accordance with the procedures provided for indemnification or payment or reimbursement of expenses, as the case may

be, under Section 2–418 of the MGCL for directors of Maryland Corporations.

(Emphasis added.) Thus, as Kramer agrees, his entitlement to an advancement under Republic's Bylaws depends upon two things: first, that he incurred his expenses in connection with a "proceeding" under § 2–418; and second, that he was made a "party" to the "proceeding" by reason of his status as a trustee of Republic.

In analyzing Kramer's entitlement to an advancement, we begin by noting that the parties filed cross-motions for summary judgment. The Circuit Court granted summary judgment in favor of Liberty and denied Kramer's motion. In considering a trial court's grant of a motion for summary judgment, this Court reviews the record in the light most favorable to the non-moving party. *Doe v. Board of Elections,* 406 Md. 697, 711, 962 A.2d 342, 350 (2008); *Anderson v. The Gables,* 404 Md. 560, 570, 948 A.2d 11, 18 (2008); *see Rhoads v. Sommer,* 401 Md. 131, 148, 931 A.2d 508, 518 (2007) ("We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party."). If there is no genuine dispute of material fact, this Court must determine whether the trial court correctly entered summary judgment as a matter of law. *See* Maryland Rule 2–501(f) [8]; *Doe,* 406 Md. at 711, 962 A.2d at 350. Here, there is no dispute of material fact.

Next, we recognize that this case involves an issue of statutory interpretation. In *Smith v. State,* 399 Md. 565, 578–79, 924 A.2d 1175, 1182 (2007), we explained our principles of statutory interpretation as follows:

Our goal, when interpreting statutes, is to "identify and effectuate the legislative intent underlying the statute(s) at

---

8. In pertinent part, Maryland Rule 2–501(f) provides:

The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law. ...

issue." *Gilmer v. State,* 389 Md. 656, 662, 887 A.2d 549, 553 (2005); *Cain v. State,* 386 Md. 320, 327, 872 A.2d 681, 685 (2005); *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000); *Pete v. State,* 384 Md. 47, 57–58, 862 A.2d 419, 425 (2004); *Graves v. State,* 364 Md. 329, 345, 772 A.2d 1225, 1235 (2001). *See also Harris v. State,* 331 Md. 137, 148–49, 626 A.2d 946, 951 (1993) (" '[T]he search for [legislative] intent is most accurately described as an effort to discern some general purpose, aim, or policy of the statute.' "); *In re Keith G.,* 325 Md. 538, 542, 601 A.2d 1107, 1109 (1992); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991) ("Our focus is, therefore, centered upon the statute's policy or purpose."). The best source of legislative intent is the statute's plain language, and when the language is clear and unambiguous, our inquiry ordinarily ends there. *Gilmer,* 389 Md. at 663, 887 A.2d at 553; *Cain,* 386 Md. at 327, 872 A.2d at 685; *Pete,* 384 Md. at 57–58, 862 A.2d at 425; *Drew[ v. First Guaranty Mortgage Corp.],* 379 Md. [318] at 327, 842 A.2d [1] at 6 [2003]; *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995); *State v. Thompson,* 332 Md. 1, 6–7, 629 A.2d 731, 734 (1993). "In the interest of completeness, however, we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Harris v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993). *See also Robey v. State,* 397 Md. 449, 454, 918 A.2d 499, 502 (2007); *Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005). In other words, the resort to legislative history is a confirmatory process; it is not undertaken to seek contradiction of the plain meaning of the statute. *Robey,* 397 Md. at 454, 918 A.2d at 502; *Stanley,* 390 Md. at 185, 887 A.2d at 1084. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments. *Robey,* 397 Md. at 454, 918 A.2d at 502.

We begin our statutory analysis by determining what constitutes a "proceeding" within the meaning of § 2–418, as that determination is dispositive in this case. In other words, if we

conclude that Kramer did not incur his expenses in a "proceeding," then we need not consider whether Kramer was made a "party" to any "proceeding" by reason of his status as a trustee of Republic. *See Shearin v. E.F. Hutton Grp., Inc.,* 652 A.2d 578, 593 (Del.Ch.1994) (noting that the first step in analyzing one's entitlement to indemnification is determining "whether the expense incurred (or to be incurred) has been incurred in connection with a covered proceeding"). Neither this Court nor the Court of Special Appeals has yet clarified what constitutes a "proceeding" within the meaning of § 2–418. We have opined, however, in the context of an administrative proceeding, that "[t]he word 'proceedings' is a term of broad scope, encompassing both the investigative and adjudicative functions of an administrative agency." *Banach v. St. Comm'n on Human Rel.,* 277 Md. 502, 509–10, 356 A.2d 242, 247 (1976) (citing *United States v. Fruchtman,* 421 F.2d 1019, 1021 (6th Cir.1970) (" '[P]roceeding' is a term of broad scope, encompassing both the investigative and adjudicative functions of a department or agency."), *cert. denied,* 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970)). We have also noted that "any initial step before a judicial tribunal preliminary to the commencement of a civil suit or a criminal prosecution is a proceeding." *State v. Ensor and Compton,* 277 Md. 529, 544, 356 A.2d 259, 267 (1976) (internal quotations and citation omitted).[9]

---

9. Although not commenting directly upon what constitutes a "proceeding" subject to advancement or indemnification, other state courts, as well as the federal courts, have also made similar, general observations regarding the definition of the term "proceeding." *See, e.g., Nicolaou v. Horizon Media, Inc.,* 402 F.3d 325, 329 (2d Cir.2005) (recognizing that the term " 'proceeding' refers to the progression of a lawsuit or other business before a court, agency, or other official body"); *Statter v. United States,* 66 F.2d 819, 822 (9th Cir.1933) (" '[P]roceeding' means the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, the mode of deciding them, of opposing judgments and of executing." (internal quotations and citations omitted)); *Datron, Inc. v. CRA Holdings, Inc.,* 42 F.Supp.2d 736, 743 (W.D.Mich.1999) (commenting that "in common parlance and understanding, the term ['proceeding'] has a legal connotation and is customarily limited to the actions before judicial and quasi-juridical tribunals"); *State ex rel. Johnson v. Indep. Sch. Dist.,* 260 Minn. 237,

Because we are guided by "ordinary, popular understanding of the English language" when interpreting a given statute, we shall first turn to the dictionary to aid our statutory analysis. *See Stoddard v. State*, 395 Md. 653, 668–69, 911 A.2d 1245, 1254 (2006) (applying definitions contained in *Black's Law Dictionary* to interpret the meaning of the word "incident" as it appears in the Maryland Code). As we have noted, § 2–418 defines a "proceeding," in broad terms, as "any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative." Md.Code (1975, 2007 Repl.Vol.), § 2–418(a)(7). According to *Black's Law Dictionary*, an "action" is "[a] civil or criminal judicial proceeding," and a "suit" is "[a]ny proceeding by a party or parties against another in a court of law." BLACK'S LAW DICTIONARY 31, 1475 (8th ed.2004). In addition, *Black's Law Dictionary* defines a "proceeding" as: "1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action...." BLACK'S LAW DICTIONARY, *supra*, at 1241; *see also* WEBSTER'S II NEW COLLEGE DICTIONARY 902 (3d ed.2005) (providing the legal definition of "proceeding" as "[l]itigation" or "[t]he act of instituting or conducting litigation"); EDWIN E. BRYANT, THE LAW OF PLEADING UNDER THE CODES OF CIVIL PROCEDURE 3 (1894) (" 'Proceeding' is a word much used to express the business done in courts."). Thus, based on the express language of the statute, as illuminated by these definitions, we conclude that a "proceeding" within the meaning of § 2–418 is an actual or threatened adjudicative or administra-

---

109 N.W.2d 596, 602 (1961) (" 'Proceeding' includes actions and special proceedings before judicial tribunals as well as proceedings pending before quasi-judicial officers and boards."); *State ex rel. J.S.*, 273 N.J.Super. 450, 642 A.2d 430, 434 (Ch.Div.1994) (noting that the term "proceeding" is "construed to include all methods of invoking the action of the courts"); *Towry v. Kiser*, 184 Or.App. 105, 55 P.3d 509, 510 (2002) ("The plausible meanings of 'proceeding' thus refer either to steps within a single action, for example, a pretrial show cause 'proceeding' or, alternatively, to the entire course of litigation itself.").

tive process, or any stage of either process, including an investigation.

Having concluded that the term "proceeding" involves a process that is civil, criminal, administrative, or investigative in nature, we need not resort to external sources to determine legislative intent. Nevertheless, "[i]n the interest of completeness," we shall venture beyond the express language of the statute to confirm that our interpretation is correct. *Smith,* 399 Md. at 578, 924 A.2d at 1182. The portion of § 2–418 defining the term "proceeding" has its origin in Senate Bill 756 of the 1981 General Assembly's legislative session,[10] as evolved from Md. Ann.Code art. 23, § 60 (1951). In the Department of Legislative Services's Bill File on Senate Bill 756 is an "Explanation of Senate Bill 756: Indemnification" that provides, "This Bill is designed to provide uniformity with the Model Act."[11] Addressing the policies underlying § 2–418, the explanation further provides:

> The Bill would provide a more workable arrangement for providing appropriate protection for directors and officers which is of key importance in view of the increased number of suits, increased cost of litigation, and desire on the part of many companies to broaden management to include persons representing a variety of points of view.

*See also* JAMES J. HANKS, JR., MARYLAND CORPORATION LAW § 6.21[a] (2008 Supp.) ("Many of the provisions of Section 2–418 are based upon the indemnification provisions of the Model Business Corporation Act. . . . Thus, the Official Comment to the Model Act is a particularly valuable aid in interpreting Section 2–418.").

Because § 2–418 is based upon the Model Business Corporation Act (the "Model Act"), we shall examine the Model Act in detail. As the Model Act appeared in 1981, when the

---

10. In 1981, the General Assembly revised § 2–418 to define the term "proceeding" as follows: " 'Proceeding' means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative."

11. *See generally* MODEL BUS. CORP. ACT ANN. (4th ed.2008).

General Assembly enacted the version of § 2–418 relevant to this case, the Model Act defined "proceeding" exactly as the term appears in § 2–418: "Proceeding means any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative." *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel,* 36 Bus. Law. 99, 103 (1980). The inclusion of this language in the text of the Model Act, which had not before contained a definition of "proceeding," was not substantive. *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel, supra,* at 110 (noting that the definition of the term "proceeding" was added to eliminate inconsistencies in the statutory language). Nevertheless, the drafters of the Model Act, the Committee on Corporate Laws of the American Bar Association, recognized that "[n]ew types of proceedings ha[d] emerged such as investigations of illegal payments conducted under the direction of a committee of the board of directors." *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel, supra,* at 101.

In 1994, the Committee on Corporate Laws modified the then-current definition of a "proceeding" to its most recent iteration: "Proceeding means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, or investigative and whether formal or informal." 2 Model Bus. Corp. Act Ann., § 8.50 at 367, 371 (4th ed.2008). The Official Comment to the Model Act provides that the term "proceeding" should be read broadly:

> The broad definition of "proceeding" ensures that the benefits of this subchapter will be available to directors in new and unexpected, as well as traditional, types of litigation or other adversarial matters, whether civil, criminal, administrative, or investigative. It also includes arbitration and other dispute resolution proceedings, lawsuit appeals, and petitions to review administrative actions.

*Id.,* § 8.50 at 374–75. Notwithstanding this acknowledgment that "proceeding" is a term of broad scope, the Committee has

not exhibited any intent to expand the definition of the term beyond "legal proceedings." [12]

Many other states in addition to Maryland have enacted indemnification and advancement laws based upon the Model Act. *See* JOSEPH WARREN BISHOP, JR., LAW OF CORPORATE OFFICERS AND DIRECTORS: INDEMNIFICATION AND INSURANCE, § 6 at 9 (2003) (noting that all but seven jurisdictions have enacted indemnification statutes based on a version of the Model Act). One such state is Delaware, whose statute, similar to Maryland's, provides the following with respect to advancement:

> (e) *Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit, or proceeding* upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. . . .

DEL.CODE ANN. tit. 8, § 145(e) (1974, 2001 Repl.Vol.) (emphasis added). Due to this similarity, and because the Delaware courts have gained a reputation for their expertise in matters of corporate law, we deem decisions of the Delaware Supreme Court and Court of Chancery [13] to be highly persuasive as to

---

**12.** *See* 2 MODEL BUS. CORP. ACT ANN., *supra*, at 367 ("Indemnification (including advance for expenses) provides financial protection by the corporation for its directors against exposure to expenses and liabilities that may be incurred by them in connection with *legal proceedings* based on an alleged breach of duty in their service to or on behalf of the corporation. Today, when both the volume and the cost of *litigation* have increased dramatically, it would be difficult to persuade responsible persons to serve as directors if they were compelled to bear personally the cost of vindicating the propriety of their conduct in every instance in which it might be challenged." (emphasis added)).

**13.** According to the Delaware State Courts' website,
> [t]he Court of Chancery has jurisdiction to hear and determine all matters and causes in equity. . . . In today's practice, the litigation in the Court of Chancery consists largely of corporate matters, trusts, estates, and other fiduciary matters, disputes involving the purchase

our interpretation of what constitutes a "proceeding" within the meaning of § 2–418.

The Delaware courts have held that an "action, suit or proceeding" subject to indemnification or advancement includes an internal investigation. *See Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del.2005) (holding that a corporation was required to advance to its officer the expenses incurred during an internal audit and subsequent lawsuits); *see also Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del.1992) (affirming that a corporation was required to advance to its former director the costs of defending the federal securities law action that the corporation brought against him); *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 341–44 (Del.1983) (concluding that a company's former directors were entitled to indemnification for costs incurred in connection with litigation challenging their removal from the board); *Sun–Times Media Group, Inc. v. Black*, 954 A.2d 380, 396 (Del.Ch.2008) (noting that "an action, suit or proceeding refers to a discrete administrative or judicial matter involving a particular subject and encompasses all its stages"); *Essential Enters. Corp. v. Automatic Steel Prods., Inc.*, 164 A.2d 437, 442 (Del.Ch.1960) (concluding that directors were "entitled to indemnification for the costs reasonably incurred by them in successfully defending the action

---

and sale of land, questions of title to real estate, and commercial and contractual matters in general. When issues of fact to be tried by a jury arise, the Court of Chancery may order such facts to trial by issues at the Bar of the Superior Court (10 Del. C., 369).

Delaware State Courts, Delaware Court of Chancery, Jurisdiction, http://courts .delaware.gov/Courts/CourtofChancery/?jurisdiction.htm. In addition, the Court of Chancery "is perceived to have a deep body of case law and a high level of expertise" in the field of corporate law. J. Robert Brown Jr., *The Irrelevance of State Corporate Law in the Governance of Public Companies*, 38 U. Rich L.Rev 317, 347 (2004); *see also Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F.Supp.2d 514, 519 (D.S.D.2000) ("[T]he Delaware chancery court ... has earned a reputation for its 'expertise concerning corporate governance.'"); *In re Ivan F. Boesky Sec. Litig.*, 129 F.R.D. 89, 97 (S.D.N.Y. 1990) (noting that "Delaware has long been recognized as the fountainhead of American corporations and that its Courts of Chancery are known for their expert exposition of corporate law"). Appeals from the Court of Chancery are taken to the Supreme Court of Delaware. Del Const. art. IV, § 11, cl. 4.

attacking their status as directors"); JOHN F. OLSON & JOSIAH HATCH III, DIRECTOR AND OFFICER LIABILITY, INDEMNIFICATION AND INSURANCE § 5:11 (2007) (noting that "courts construing the Delaware statute have not been tempted to read any types of limitations into 'action, suit, or proceeding,'" and the phrase encompasses "grand jury investigations, informal SEC investigations and internal corporate investigations"). Regarding the policies underlying indemnification and advancement, the Supreme Court of Delaware has observed:

> Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service. . . .
>
> Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service. Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.

*Homestore, Inc.*, 888 A.2d at 211 (footnote omitted); *see Hibbert*, 457 A.2d at 344 (noting that the policy of indemnification "'is to encourage capable men [and women] to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve'" (quoting E. FOLK, THE DELAWARE GENERAL CORPORATION LAW 98 (1972))).

Notwithstanding the broad scope of what constitutes an "action, suit or proceeding" subject to advancement or indemnification, and consistent with the policies underlying indemnification and advancement, the Court of Chancery has recognized that the phrase is not boundless and excludes internal matters of corporate governance. In *Donohue v. Corning*, 949 A.2d 574, 575 (Del.Ch.2008), a company removed its managing partner, Mark Donohue, purportedly for cause. Alleging an improper removal, Donohue then sued the company and sought an advancement of his litigation expenses pursuant to

the advancement provision of the company's Limited Liability Company Agreement. *Id.* The advancement provision provided, in pertinent part:

> To the fullest extent permitted by law, the Company shall indemnify and hold harmless ... Covered Persons from and against all liabilities and expenses ... incurred in connection with the defense or disposition of any claim, action, suit, *or proceeding,* whether civil, criminal, or investigative.... The Company shall advance such expenses to the Covered Person upon receipt of an undertaking from such Covered Person to repay the advanced amount if it is ultimately determined that such Covered Person was not entitled to indemnification.

*Donohue,* 949 A.2d at 576 (emphasis added).[14] The court held that Donohue was not entitled to an advancement because he did not incur his expenses in defending or disposing of an actual or threatened "proceeding," thereby noting that a removal for cause is not a "proceeding." *Donohue,* 949 A.2d at 580.

■ Turning to the instant case, our review of Maryland legislative history, the Model Business Corporation Act, and the Delaware courts' construction of what constitutes an "action, suit or proceeding" subject to advancement or indemnification confirms that a "proceeding" within the meaning of § 2–418 involves an actual or threatened adjudicative or administrative process, or any stage of either process, including an investigation. The term "proceeding" does not, however, comprise a corporation's internal governance functions, such as the removal of an officer or director for cause. Thus, we reject as unpersuasive Kramer's reliance on *Gentile v. SinglePoint Financial, Inc.,* 787 A.2d 102 (Del.Ch.2001), *aff'd,* 788 A.2d 111 (Del.2001), for his contention that *all* internal adversarial proceedings are deemed to be "proceedings" under § 2–418.

---

**14.** Donohue was a "Covered Person" under the Limited Liability Company Agreement because of his status as managing partner. *Donohue v. Corning,* 949 A.2d 574, 575 n. 4 (Del.Ch.2008).

In *Gentile,* in connection with the firing and removal of the plaintiff director, John Gentile, the defendant company conducted an internal investigation into Gentile's conduct. *Gentile,* 787 A.2d at 103–04. The company then filed a lawsuit against Gentile for, among other things, breach of fiduciary duty. *Gentile,* 787 A.2d at 104. Pursuant to the company's bylaws, Gentile demanded an advancement of his legal expenses, including those expenses incurred during the company's internal investigation of him. *Gentile,* 787 A.2d at 105. The company's bylaws provided that "[r]easonable expenses incurred by an Indemnitee who was or is a witness or was or is threatened to be made a named defendant or respondent in a Proceeding shall be paid or be reimbursed by the Corporation at reasonable intervals in advance of the final disposition of such Proceeding. . . ." *Gentile,* 787 A.2d at 106. In addition, the bylaws defined a "Proceeding" as "any threatened, pending or completed action, suite [sic] or proceeding, whether civil or criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding." *Id.* (alteration in original). The court held that "[t]here is little question that . . . the internal investigation identified in Gentile's demand meet[s] the literal definition of a "Proceeding." *Gentile,* 787 A.2d at 106–07. Further, the court opined that "to the extent Gentile has incurred any expenses relating directly to the company's internal investigation . . . those costs or expenses are covered by the mandatory language of [the company's] bylaws." *Gentile,* 787 A.2d at 105 n. 8.

 Here, like in *Gentile,* there was an internal investigation. Specifically, Republic engaged Audit Committee Counsel to investigate the extent of Republic's involvement in potential criminal activity in West Palm Beach, Florida. Although this investigation was clearly a "proceeding" within the meaning of § 2–418, the Bylaws of Republic set forth an additional requirement before a trustee or officer may obtain an advancement for expenses incurred in connection with a "proceeding." That is, the trustee or officer must have been

"made a party [to the proceeding] by reason of service in such capacity."

Under § 2–418, a " '[p]arty' includes a person who was, is, or is threatened to be made a named defendant or respondent in a proceeding." That one be made a "party" to a "proceeding" by reason of his or her official status to be entitled to an advancement is not a requirement unique to the Bylaws of Republic. In Delaware, for example, advancement and indemnification provisions typically contain such language. *E.g., Homestore, Inc.*, 888 A.2d at 212.[15] For a "proceeding" to be by reason of one's official status, there must exist a nexus or causal connection between the underlying proceeding and one's official status. *Homestore, Inc.*, 888 A.2d at 214. For example, "[t]his connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct" giving rise to the "proceeding." *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del.Ch. 2007).

Illustrating a "proceeding" to which a director was made a "party" by reason of his official status is *Gentile.* In that case, Gentile received the following letter before the defendant company investigated his alleged misconduct:

Since the Company [SinglePoint] terminated your employment for cause on July 30, 1999, the Company has begun an investigation into your conduct as a former officer and director of the Company. While you were an officer and director, you owed the Company a duty of utmost good faith and loyalty. From what the Company has uncovered so far, you have breached that duty on numerous occasions.

---

**15.** In *Homestore, Inc.*, the relevant governing document provided, in pertinent part:

Each person who was or is ... involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (the "Proceeding"), *by reason of the fact that such person ... is or was a director or officer of the Corporation* ... shall be indemnified and held harmless by the Corporation to the fullest extent permitted by the Delaware General Corporation Law."

*Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del.2005) (emphasis added).

*Gentile,* 787 A.2d at 104 (alteration in original). The court held that Gentile was a "named defendant or respondent" in the internal investigation and, therefore, a "party." *Gentile,* 787 A.2d at 107. Although the court did not comment directly on the matter, it is also apparent that Gentile was made a "party" by reason of his official status, because the company investigated Gentile's conduct in his capacity as an officer and director of the company. *Gentile,* 787 A.2d at 104.

In *Stifel Financial Corp. v. Cochran,* 809 A.2d 555, 562 (Del.2002), the court held that a "proceeding" was not by reason of one's official corporate capacity. In that case, a company terminated its officer and director, Robert Cochran, for cause. *Stifel Financial Corp.,* 809 A.2d at 557. Cochran then refused to repay excess compensation and the balance of a promissory note, as was required by his employment agreement, and the company commenced an arbitration action against him to recover those amounts. *Id.* Cochran then filed an indemnification action pursuant to the company's bylaws, which provided:

> "The Corporation [Stifel Financial] shall indemnify to the full extent authorized by law any person made or threatened to be made a party to any action, suit, or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he . . . is or was a director, officer or employee of the Corporation or any predecessor of the Corporation or serves or served any other enterprise as a director, officer or employee at the request of the Corporation or any predecessor of the Corporation."

*Id.* (alteration in original). The court held that Cochran's defense of the excess compensation and promissory note claims was not susceptible to indemnification under the company's bylaws because those claims were not directed at Cochran in his official capacity as an officer and director. *Stifel Financial Corp.,* 809 A.2d at 562. The Court went on to note that "[a]lthough Cochran's termination is the event that triggered the relevant provisions of the employment contract, Cochran's decision to breach the contract was entirely a personal one, pursued for his sole benefit." *Id.*

Here, like in *Stifel Financial Corp.*, there was no nexus between the internal investigation—a "proceeding" within the meaning of § 2-418—and Kramer's status as a trustee of Republic. Republic's Audit Committee conducted an internal investigation primarily to investigate the dealings between RPC and Commissioner Liberti. As evident from the facts that Grigg executed consulting agreements between RPC and Liberti, and that Grigg was asked to take a leave of absence during the investigation, Audit Committee Counsel's main concern was Grigg. Thus, Grigg's name figures prominently within the acknowledged "focus" of Audit Committee Counsel's investigation.

Audit Committee Counsel's investigation concerned Kramer because of his ownership in the RPC venture, as it was RPC that entered into the consulting arrangement with Commissioner Liberti. Although Audit Committee Counsel eventually uncovered certain deprecatory e-mails from Kramer to Grigg that it found suggestive of Kramer's unfitness to be a trustee, those communications were not discovered in an investigation of Kramer as a trustee. Moreover, Kramer cannot contend that he was made a "party" to the internal investigation by reason of his status as a trustee because the investigation culminated in the conclusion that Kramer failed to convey, during the course of the investigation, an appropriate "tone at the top." This conclusion by Audit Committee Counsel may implicate Kramer's fiduciary duties to Republic, but Kramer's reliance upon it blurs the distinction between the investigation and its aftermath.[16] It ignores the reason why Kramer became of interest to Audit Committee Counsel in the first place, thereby placing undue weight upon the fact that Kramer

---

16. Indeed, the internal investigation ended when Audit Committee Counsel issued its report on October 31, 2006. No further investigation occurred beyond that date, and Kramer's lawyers did not act to suggest otherwise. For example, Kramer's lawyers did not represent him in an interview, and any document production following the issuance of Audit Committee Counsel's report was done at the behest of Kramer, not Republic.

coincidentally held positions with both RPC and Republic. If anyone made Kramer a "party" to the internal investigation by reason of his status as a trustee, it was Kramer himself, who obstructed Audit Committee Counsel's ability to meaningfully interview attorney Robert Sanders and challenged the authority of Republic's Audit Committee. Kramer cannot reasonably argue that such actions, taken for his personal benefit as co-owner of RPC, somehow make him subject to the advancement provision of Republic's Bylaws.

Having concluded that the internal investigation in this case, though a "proceeding," was not one to which Kramer was made a "party" by reason of his status as a trustee of Republic, Kramer's entitlement to an advancement necessarily hinges on our determination that some other "proceeding" occurred during the period in which Republic considered Audit Committee Counsel's recommendation that Kramer either resign or face "further action." Because Kramer did not incur his expenses in an actual civil, criminal, or administrative matter, we must determine whether there was a threatened "proceeding." A "threat" is: "1. A communicated intent to inflict harm or loss on another or on another's property. . . . 2. An indication of an approaching menace . . . . [or] 3. A person or thing that might well cause harm." BLACK'S LAW DICTIONARY, *supra*, at 1519. Here, the only other conceivable threats made to Kramer were that he could resign or face "further action," that a "reckoning was coming upon Grigg and [Kramer] could get [him]self caught up in it," and that "the Audit Committee w[ould] proceed accordingly" if Kramer did not appear before the Audit Committee. We do not deem these words sufficient to constitute a threatened "proceeding." *Cf. Schoon v. Troy Corp.*, 948 A.2d 1157, 1170 (Del.Ch.2008) (holding that a "proceeding" was "unquestionably threatened" where a company named its director in a counterclaim). Rather, at best, the declaration indicates that Kramer would be removed from office for cause if he did not resign. A removal for cause, which would have been accomplished by

shareholder vote with respect to Kramer's status as a trustee, and by the Board with respect to Kramer's status as Chairman, is a matter of internal corporate governance and is not a "proceeding" within the meaning of § 2–418. *See Donohue,* 949 A.2d at 576. Accordingly, because there was no "proceeding" to which Kramer was made a "party" by reason of his status as a trustee of Republic, we shall affirm the judgment of the Circuit Court for Baltimore City.[17]

## JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED, WITH COSTS.

---

**17.** We note, however, that our holding is limited to what constitutes a "proceeding" under § 2–418 and who is a "party" to such a "proceeding" under the Bylaws of Republic. A company may, pursuant to the non-exclusivity provision of § 2–418(g), obligate itself to provide additional advancement rights if it so chooses. *See* WILLIAM E. KNEPPER & DAN A. BAILEY, 2 LIABILITY OF CORPORATE OFFICERS AND DIRECTORS, § 22 at 33 (7th ed.2006) (noting that a non-exclusive provision "allows a corporation to liberalize indemnification of their corporate directors even beyond what the statutes now provide and permit a corporation to establish its own corporate policies for indemnification"). Section 2–418(g) provides:

> (g) *Validity of indemnification provision.*—The indemnification and advancement of expenses provided or authorized by this section may not be deemed exclusive of any other rights, by indemnification or otherwise, to which a director may be entitled under the charter, the bylaws, a resolution of stockholders or directors, an agreement or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office.

The propriety of such contracts would, however, be limited by public policy considerations. KNEPPER & DAN A. BAILEY, *supra,* § 22 at 35; JAMES J. HANKS, JR, MARYLAND CORPORATION LAW § 6.21[i] (2007 Supp.).