John A. GENTILE, an individual, Plaintiff,

v.

SINGLEPOINT FINANCIAL, INC., a Delaware Corporation f/k/a Op-TeamaSoft, Inc., Defendant.

No. C.A. 17755.

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 2, 2000.

Decided: Jan. 5, 2001.

John L. Reed (argued), Duane Morris & Heckscher, LLP, Wilmington, Delaware, for Plaintiff.

Jesse A. Finkelstein, Richards, Layton & Finger, P.A., Wilmington, Delaware, and Daniel W. Halston (argued), Sean T. Carnathan, Hale and Dorr, LLP, Boston, Massachusetts, for Defendant.

## OPINION

LAMB, Vice Chancellor.

### I. INTRODUCTION

John A. Gentile brought this action under § 145(k) of the Delaware General Corporation Law [1] ("DGCL") seeking advancement of reasonable attorney's fees, costs, and litigation expenses from SinglePoint Financial, Inc., a Delaware corporation.[2] Gentile, a former officer and director of SinglePoint, claims that he is entitled to mandatory advancement under Single-Point's bylaws in connection with several related matters; first a "corporate investigation" concerning his conduct as an officer and director, and second, certain lawsuits initiated by him to recover property from SinglePoint. SinglePoint responds that, under its bylaw, advancement is only required for indemnitees who are *defending* claims against them arising out of their service to the corporation, not those who act as *plaintiffs* "motivated purely by financial self-interest."

The matter is before the court on cross-motions for summary judgment. For the reasons discussed below, I conclude that both motions will be granted in part and denied in part.

### II. FACTUAL BACKGROUND

Plaintiff Gentile was a director of Single-Point from February 1996 to September 1999 and an officer from February 1996 to July 1999. In December 1998, SinglePoint entered into an agreement with Relevant Information and Training Systems, Inc. ("RIT"), under the terms of which Single-Point was to receive RIT stock and other consideration in exchange for services rendered. By March 1999, SinglePoint had received 220,000 shares of RIT stock and, it is undisputed, the principal officers of SinglePoint (who were also its directors) allocated those shares among themselves in varying percentages. Approximately 38,781 shares were "distributed" to Gentile.[3] SinglePoint then asked RIT's transfer agent to issue new certificates in the names of the individuals.

On or about April 5, 1999, the transfer agent informed SinglePoint that RIT refused to recognize the transfer because it claimed that SinglePoint had materially breached the underlying contract. In May 1999, SinglePoint filed an action against RIT in Rhode Island federal court seeking to compel RIT to recognize the transfer and issue new share certificates, including one to Gentile.[4]

Contemporaneously, Gentile's relationship with SinglePoint soured, due to the collapse of the contractual arrangements with RIT. In July 1999, Gentile was fired and several months later was removed from the board of directors. Gentile retained counsel and demanded at a Single-Point special shareholder meeting that the

1. 8 *Del.C.* § 145(k).

2. SinglePoint Financial, Inc. is a Delaware corporation and was formerly known as Op-TeamaSoft, Inc.

3. SinglePoint contends that any decision to allocate shares to Gentile was "contingent on the successful performance of the Agreement with RIT and on receipt of those shares." It is unnecessary for me to resolve any factual issue about the circumstances of the share allocation in connection with this opinion.

4. *OpTeamaSoft, Inc. v. Relevant Information and Training Systems, Inc.*, C.A. No. 99–226ML (D.R.I.) (filed May 5, 1999).

company repurchase or allow the transfer of certain shares of SinglePoint stock held by him. Gentile also sought an inspection of corporate books and records and requested a certificate from SinglePoint for the RIT stock.

On or about October 15, 1999, SinglePoint and RIT entered into a stipulation that required RIT to escrow 40,000 shares of its stock for the benefit of SinglePoint and further required RIT to refrain from interfering with the transfer of 200,000 shares of its stock to two of SinglePoint's directors, but not to Gentile. The stipulation was approved by the Rhode Island federal court on October 15, 1999, without notice to Gentile. Gentile learned of it on or about November 12, 1999, and promptly wrote to the SinglePoint board of directors to complain about his exclusion. His counsel also wrote to RIT and demanded that Gentile's shares be transferred to him.

SinglePoint responded in a November 18, 1999 letter, stating:

Since the Company [SinglePoint] terminated your employment for cause on July 30, 1999, the Company has begun an investigation into your conduct as a *former officer and director of the Company*.... While you were an officer and director of the Company, you owed the Company a duty of the utmost good faith and loyalty. From what the Company has uncovered so far, you breached that duty on numerous occasions.

After reciting various allegations of wrongdoing, the letter closed, "It is unfortunate, but the Company is now forced to consider filing a legal action against you to recover for damages you have caused it."

Gentile moved to intervene in the SinglePoint/RIT action in Rhode Island federal court on November 23, 1999. On November 30, 1999, before responding to that motion, and again without notice to Gentile, SinglePoint and RIT executed and filed a stipulation of dismissal with prejudice that was entered the same day. The motion to intervene was later denied.

SinglePoint then sued Gentile in Rhode Island state court on December 3, 1999, alleging, *inter alia*, breach of contract and breach of fiduciary duty while serving as a director and officer of SinglePoint.[5] The complaint sought, among other things, money damages and rescission of a stock transaction between SinglePoint and Gentile in which he received 1,000,000 shares of SinglePoint stock as compensation. The complaint also alleged that Gentile, through his efforts to secure a portion of the RIT shares for himself, had tortiously interfered with SinglePoint's relationship with RIT.

Unaware of this action against him, Gentile sued SinglePoint in federal court in Rhode Island on December 6, 1999, to recover his share of the RIT stock from SinglePoint.[6] Gentile initially named RIT as a defendant in that action. He later dismissed RIT from that action but named it as a defendant in an action filed in this court on March 7, 2000.[7]

While SinglePoint and Gentile each initially sought a stay of the other's action,

---

5. *SinglePoint Financial, Inc. v. John A. Gentile,* C.A. No. NC99–502 (R.I.Super.) (filed Dec. 3, 1999).

6. *John A. Gentile v. OpTeamaSoft, Inc. a/k/a SinglePoint Financial, Inc. et al.,* C.A. No. 99–591ML (D.R.I.) (filed Dec. 6, 1999).

7. SinglePoint claims that "[b]y doing so, [Gentile] sought to force SinglePoint to defend against multiple lawsuits in different jurisdictions because he knew that under its Settlement Agreement with RIT, SinglePoint was required to indemnify RIT for subsequent actions brought by Mr. Gentile for the RIT shares." Gentile has since dismissed this action.

SinglePoint first agreed to a formal stay of its action in Rhode Island state court. Gentile's federal action has since been stayed pending the outcome of this action for advancement of expenses. After oral argument on the present motions, Single-Point reported that it had dismissed its Rhode Island state court action against Gentile.

**The Demand for Advancement**

On January 10, 2000, Gentile's counsel made a demand on SinglePoint for advancement of his litigation expenses in connection, among other things, with (i) the corporate investigation described in the November 18, 1999 letter, (ii) the SinglePoint/RIT federal court litigation, (iii) Gentile's federal court action against SinglePoint, and (iv) SinglePoint's state court action against Gentile.

SinglePoint initially denied all of Gentile's demand. SinglePoint has since agreed to advance Gentile his reasonable litigation expenses in the Rhode Island state court action initiated by it.[8] With respect to the remaining matters, and, in particular, the two federal court litigations, SinglePoint argues that Gentile is not entitled to advancement for reasons that will be addressed later in this opinion.

### III. ANALYSIS

■ Jurisdiction is proper under § 145(k) of the DGCL, which vests the Court of Chancery "with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnifica-

tion brought under this section or under any bylaw, agreement vote of stockholders or disinterested directors, or otherwise." The standard I apply on these cross-motions for summary judgment is a familiar one. Summary judgment will be granted under Court of Chancery Rule 56 where there are no material issues of fact and the moving party is entitled to judgment as a matter of law.[9] The pendency of "cross-motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues."[10] In this case, however, there is no material issue of fact that would prevent the entry of summary judgment.

### The Statutory Framework

Section 145(e) of the DGCL provides authority for a Delaware corporation to pay attorney's fees and other litigation costs of an officer or director incurred "in defending" a covered proceeding in advance of its final disposition. In *Citadel Holding Corp. v. Roven*, the Delaware Supreme Court discussed Section 145(e), as follows: "The authority conferred is permissive. The corporation 'may' pay an officer or director's expenses in advance."[11] The same statutory provision also authorizes Delaware corporations to advance expenses to former officers and directors as follows: "Such expenses (including attorneys' fees) incurred by former directors and officers ... may be so paid upon such terms and conditions, if any, as the corporation deems appropriate."[12]

---

8. Also, while it is not completely clear from the papers, I take it as true that, to the extent Gentile has incurred any expenses relating directly to the company's internal investigation (as opposed to any of the litigations filed by him), SinglePoint would also acknowledge that those costs or expenses are covered by the mandatory language of its bylaws.

9. *Williams v. Geier*, Del.Supr., 671 A.2d 1368, 1375 (1996).

10. *United Vanguard Fund, Inc. v. TakeCare, Inc.*, Del.Supr., 693 A.2d 1076, 1079 (1997).

11. Del.Supr., 603 A.2d 818, 823 (1992).

12. 8 *Del.C.* § 145(e).

■ As *Citadel* illustrates, a corporation can make the right to advancement of expenses mandatory, through a provision in its certificate of incorporation or bylaws or (as was the case in *Citadel*) a contract specifically addressing the issue.[13] Indeed, it has become common corporate practice to adopt mandatory indemnification and advancement provisions.[14] Where such a mandatory provision exists, the rights of potential recipients of such advancements will be enforced as a contract.[15]

### The Advancement Bylaw

Article VII of SinglePoint's bylaws governs indemnification and advancement and mandates advancement in certain circumstances. Section 7.5 of Article VII, reads in relevant part:

*Advancement of Expenses.* Reasonable expenses (including court costs and attorney's fees) incurred by an Indemnitee who was or is a witness or was or is threatened to be made a named defendant or respondent in a Proceeding shall be paid or be reimbursed by the Corporation at reasonable intervals in advance of the final disposition of such Proceeding, and without making any of the determinations specified in Section 7.04, after receipt by the corporation of (a) a written affirmation by such Indemnitee of his good faith belief that he has met the standard of conduct necessary for indemnification by the Corporation under Section 7.02 and (b) a written un-

dertaking by or on behalf of such Indemnitee to repay the amount paid or reimbursed by the Corporation if ultimately it shall be determined that he has not met that standard or if it is ultimately determined that he is not entitled to be indemnified against expenses incurred by him in connection with the Proceeding pursuant to Section 7.04.[16]

The SinglePoint bylaws also contain definitions of the terms "Indemnitee" and "Proceeding," which will be discussed, *infra.*

### The Parties' Contentions

The dispute between the parties about the proper interpretation of the advancement bylaw provision is limited. For example, there is no question that Gentile is an "Indemnitee" and that the matters for which he seeks advancement are "Proceedings." Section 7.1(a) of SinglePoint's bylaws broadly defines "Indemnitee" as "any present or former director, advisory director or officer of the corporation." As both a former director and a former officer of SinglePoint, Gentile meets this definition. Similarly, § 7.1(c) defines a "Proceeding" to mean "any threatened, pending or completed action, suite [sic] or proceeding, whether civil or criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding." There is little question that

---

**13.** The need to address the right to advancement specifically is illustrated by *Advanced Min. Systems, Inc. v. Fricke,* Del.Ch., 623 A.2d 82 (1992), where the court refused to interpret a corporate bylaw mandating *indemnification* to the extent permitted by Delaware law to extend to the right of *advancement.*

**14.** Donald J. Wolfe, Jr. and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery,* § 8–2, at 308 (1998).

**15.** *Hibbert v. Hollywood Park, Inc.,* Del.Supr., 457 A.2d 339, 342–43 (1983).

**16.** SinglePoint amended its bylaws on April 26, 2000. In particular, § 7.5 of Art. VII was changed to condition the right to advancement on a discretionary corporate authorization. Nevertheless, my decision is governed by the version of § 7.5 then in existence. SinglePoint does not argue otherwise.

each of the internal investigation and the three law suits identified in Gentile's demand meet the literal definition of a "Proceeding."

There is also no question that Gentile is entitled to advancement of his costs and expenses in connection with the state court action initiated against him by SinglePoint. This has been conceded by the corporation and will not be discussed further. SinglePoint also appears to concede, by its silence, that Gentile has provided the necessary affirmation and undertaking to repay.

■ Rather, there are two main issues in contention. First, relying on *Shearin v. E.F. Hutton Group, Inc.,*[17] SinglePoint argues that advancement is unavailable to Gentile for costs or expenses incurred by him as a plaintiff in the two federal court litigations because all of his efforts therein have been directed at vindicating his personal property rights in the RIT shares—not rights or interests of the corporation. In *Shearin,* Chancellor Allen held that one seeking indemnification or advancement of expenses incurred in litigation in which she acts as a plaintiff is permissible *"only insofar as the suit was brought as part of* [her] *duties to the corporation and its shareholders."*[18]

Second, SinglePoint points out that Gentile's right to advancement is expressly limited to those Proceedings in which he is a *named defendant* or *respondent.* This element is easily satisfied with respect to both the Rhode Island state court action initiated by SinglePoint against Gentile and the internal investigation of Gentile's alleged misconduct described in the November 18, 1999 letter. But the same is not obviously true of either Gentile's efforts to intervene in the federal court litigation between SinglePoint and RIT or his

filing of the federal action against SinglePoint. If one views those matters in isolation from the internal investigation, as SinglePoint's argument suggests I should, Gentile is not, of course, a "named defendant or respondent" in either. Instead, he is a plaintiff or putative plaintiff-in-intervention.

Gentile responds that under the rationale of the *Citadel* case the company's obligation under § 7.5 of the bylaws to advance his costs and expenses in responding to the internal investigation extends to proactive steps taken by him in defending against charges of misconduct, including the initiation of litigation to recover from the corporation property belonging to him. As Gentile puts it in his reply brief:

Delaware law and SinglePoint's By-laws grant Gentile both a shield and a sword. Faced with SinglePoint's characterization of, and challenge to, his "honesty and integrity" as a director and officer—and confiscation of stock based on that challenge—, Gentile had an absolute right to take all reasonable legal steps to take on SinglePoint's serious allegations, and thereby fend off the economic and professional impact of being accused of breach of fiduciary duty.

### The *Shearin* and *Hibbert* Opinions

The issue raised by the *Shearin* case goes to the nature of the claims advanced by Gentile in his affirmative litigation efforts. If those claims can fairly be said to be only personal in nature, and not involving Gentile's duties to SinglePoint and its stockholders, *Shearin* supports the conclusion that it is *impermissible,* as a matter of law, to indemnify or advance the costs associated with them. If, instead, those claims can be said to have been brought to

17. Del.Ch., 652 A.2d 578 (1994).

18. *Id.* at 594 (emphasis in original).

uphold Gentile's "honesty and integrity as a director," Gentile argues that they may be a permissible subject of advancement.[19]

The *Shearin* court first commented that "the history of the statutory language of Section 145 confirms that the drafters of the statute originally had in mind indemnification of expenses for those who were required to *defend* actions taken on behalf of the corporation."[20] The opinion goes on to note, however, that the 1967 amendments to the law were later interpreted by the Delaware Supreme Court in *Hibbert* to permit indemnification of expenses incurred by corporate directors "who had *initiated* a lawsuit in their own names, against other directors,"[21] where that suit was brought, "at least in part, to fulfill their own fiduciary obligations to the corporation."[22] After discussing the rationale of *Hibbert*, Chancellor Allen, in *Shearin*, held that permissible claims for indemnification or advancement "will include those deriving from lawsuits brought by directors, officers, agents, etc., *only insofar as the suit was brought as part of* [the indemnitee's] *duties to the corporation and its shareholders.*"[23]

Gentile could not (and does not) seriously contend that his motion to intervene in the SinglePoint/RIT action or his Rhode Island federal court action were brought "as part of [his] duties to the corporation and its stockholders." After all, he is (and was) no longer an officer or director, and the sole object of his efforts in both of those litigations is to obtain the shares of RIT stock he claims are his. He does, however, rely on the somewhat broader language of *Hibbert*, in arguing that all of his litigation efforts were necessary to uphold his "honesty and integrity as a director[ ]." To make this argument, moreover, he seeks to tie his federal court litigation activities, as a matter of fact, to the November 18, 1999, letter informing him of the company's internal investigation.

I am unwilling to read either *Hibbert* or the facts of this case so broadly. In *Hibbert*, the plaintiffs sought reimbursement for litigation expenses incurred by them for an action they brought in their capacity as directors standing for reelection on the management slate against several other sitting directors who were leading an insurgent effort to unseat them. Their lawsuit sought to compel the defendants to attend board meetings and also sought to protect the corporation's internal audit procedures. In a model of understatement, the Supreme Court observed that "[w]e can not say that such litigation was entirely initiated without regard to any duty the plaintiffs might have had as directors. In short, those lawsuits served, as we see it, to uphold the plaintiffs' 'honesty and integrity as directors.'"[24] The facts here are quite different. First, Gentile is no longer a director and has no claim to such a position. Second, his only dispute with the corporation or its directors involves their failure and refusal to distribute any of the RIT stock to him. Focussing only on Gentile's claims in those litigations, I can say, unlike the Supreme Court in *Hibbert*, that those claims were

---

19. *Hibbert*, Del.Supr., 457 A.2d 339. Of course, even if found a permissible subject of indemnification, the question remains whether the status limitation found in SinglePoint's bylaws preclude advancement in this case.

20. Del.Ch., 652 A.2d at 594 (emphasis in original).

21. *Id.*

22. *Id.*

23. *Id.*

24. *Hibbert*, Del.Supr., 457 A.2d at 344.

"entirely initiated without regard to any duty [Gentile] might have had" as an officer or director of SinglePoint.

Moreover, the factual record fails to support Gentile's contention that he primarily seeks to clear his name of SinglePoint's charges of dishonesty and breach of fiduciary duty. The undisputed facts are otherwise. In his motion to intervene in the SinglePoint/RIT action, Gentile states, "Gentile seeks to intervene ... solely for the limited purpose of protecting his interest in the RIT stock." In his federal action against SinglePoint, all five counts relate to the disputed RIT stock. There is nothing in that complaint about the internal corporate investigation. Finally, it is obvious from a review of the undisputed record that Gentile's proactive litigation efforts are the result of developments in the SinglePoint/RIT litigation, not the November 18, 1999 disclosure of the internal corporate investigation.

For these reasons, I conclude that *Shearin* precludes the advancement of litigation expenses incurred by Gentile in connection with his efforts to prosecute the two federal court actions. Next, I will consider whether the decision of the Delaware Supreme Court in *Citadel* requires a different result.[25]

## Does *Citadel* Suggests a Different Result?

In *Citadel,* the Supreme Court considered a claim for advancement of costs and expenses for asserting both affirmative defenses and a counterclaim in an action brought by the corporation against one of its directors. The expense advancement provision of the contract at issue required the corporation to advance "[c]osts and expenses incurred ... in defending ... any action, suit or proceeding...." The Supreme Court had no difficulty concluding that this agreement covered affirmative defenses.[26] The Court wrestled, however, with the suggestion that the assertion of counterclaims in a covered proceeding also fell within the ambit of "defense," stating:

> Technically, of course [counterclaims] represent separate causes of action. But under the Federal Rules of Civil Procedure, certain claims must be asserted by a defendant in the same action and others are permissive. Counterclaims arising from the same transaction as the original complaint must be asserted or be thereafter barred

(citations omitted).[27] The Court then held, that in light of the fact that "any counterclaims asserted ... are necessarily part of the same dispute and were advanced to defeat, or offset" the corporation's claims, the advancement provision would cover the costs to bring the counterclaims.[28]

Gentile would take *Citadel* a step beyond its holding, to support the advancement of expenses incurred by him in moving to intervene in the SinglePoint/RIT litigation and in filing his federal complaint. He argues that the internal investigation is a "Proceeding" within the meaning of the bylaws and that both the motion to intervene and the federal lawsuit were necessary steps taken in his capacity as a defendant or respondent in that Proceeding. These steps were necessary and reasonable, he argues, because the corporation was using the internal investigation

25. I am not concerned here with the separate question of whether Gentile may be entitled to advancement of expenses in connection with any fiduciary duty-based counterclaims that may, in the future, be raised by the company in his federal court action.

26. Del.Supr., 603 A.2d at 824.

27. *Id.*

28. *Id.*

and charges of fiduciary misconduct as a pretext to withhold from him the RIT shares and the only way to "defend" against that tactic was to initiate court proceedings to recover the shares.

The *Citadel* court allowed the advancement of expenses relating to the assertion of counterclaims as part of the costs of defense because, it reasoned, the Federal Rules of Civil Procedure create some peril that, if a counterclaim is not asserted, it will "be thereafter barred." There is, of course, no similar rule in the context of an internal corporate investigation. Thus, Gentile was not faced with a "use-it-or-lose-it" scenario that was the logical underpinning of *Citadel.*

Moreover, *Citadel* involved the interpretation of a written contract of indemnification, the stated purpose of which was to provide the indemnitee with greater protection than was already available to him under the company's certificate of incorporation, bylaws and insurance. The Supreme Court expressly relied on this expansive purpose to interpret the advancement provision of the contract to afford Roven "a right to advances broader than that provided by these existing sources." [29] There is, of course, no similar contract here. Thus, there is no reason to interpret SinglePoint's advancement bylaw even more broadly than the provision at issue in *Citadel.*

\*　　\*　　\*

In sum, I agree with SinglePoint that Gentile is seeking to turn the American Rule (that parties to litigation each bear their own fees) on its head, in an effort to have SinglePoint finance his lawsuit against it. It bears keeping in mind that *mandatory* advancement is not required at all by the statute. Moreover, SinglePoint had the unquestioned right to limit the

mandatory advancement provision of its bylaws, among other ways, to cover only those Proceedings in which the Indemnitee is a named defendant or respondent. That limitation plainly and simply means that Gentile has no right to mandatory advancement of his expenses when he acts as a plaintiff in initiating an action.

I recognize that such a bright line rule leads to some strategic behavior by the parties, viz., SinglePoint's decision to dismiss its state court complaint against Gentile. Moreover, where, as here, the corporation has possession of property claimed by one in Gentile's position, the potential Indemnitee may be compelled to initiate litigation in order to recover that property. Nevertheless, these results are compelled by a plain reading of the bylaw and the caselaw interpreting the scope of indemnification and advancement.

Nor will Gentile be deprived of his day in court to settle his dispute with SinglePoint over the RIT stock. Like other litigants, he can either finance the lawsuit himself or seek out counsel willing to take his case on a contingency fee basis.

## IV. CONCLUSION

For all the foregoing reasons, Gentile's motion for summary judgment will be granted to the extent of his reasonable costs and expenses incurred in defending SinglePoint's Rhode Island state court litigation and to the extent that he has incurred any reasonable costs or expenses in relation to the SinglePoint internal corporate investigation described in the November 18, 1999 letter to him. SinglePoint's cross-motion for summary judgment will be granted with respect to all of Gentile's costs and expenses incurred in connection with both his efforts to intervene in the SinglePoint/RIT litigation and any other

---

29. *Citadel,* Del.Supr., 603 A.2d at 823.

litigations initiated by him against Single-Point, RIT or others. Counsel are to confer and submit a form of order, on notice if they are unable to agree, within 10 days.