COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

November 17, 2025

Michael A. Barlow, Esquire
Hayden J. Driscoll, Esquire
Quinn Emanuel Urquhart &
Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801

Phillip Trainer, Jr., Esquire
Samuel M. Gross, Esquire
Ashby & Geddes LLP
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801

RE:  *Richard R. Rogers v. Mary Kay Holding Corporation*,
C.A. No. 2025-0982-LM

Dear Counsel,

This matter involves a legal dispute between Richard R. Rogers and Mary Kay Holding Corporation concerning the advancement of legal fees. The plaintiff seeks legal fees for a pending declaratory judgment action in Texas filed by the co-trustees of the Richard R. Rogers 1975 Trust. Before me are cross-motions for summary judgment filed by both parties. The dispute turns on whether the plaintiff has a right to advancement of legal fees for the Texas action. For reasons I explain herein, I grant summary judgment for the defendant. The plaintiff is not entitled to advancement.

This constitutes my final report.

## I.     BACKGROUND

By way of background, Richard R. Rogers ("Richard") is a longtime director and the Executive Chairman of Mary Kay Holding Corporation ("MKHC").[1]  He co-founded Mary Kay in 1963 and, after retiring as CEO in 2006, continued to serve on MKHC's board, attending meetings and voting on board matters.[2]

### A. The Richard R. Rogers 1975 Trust

Mary Kay Ash, as settlor, established a trust for her son Richard and his descendants.[3]  In addition to this trust, Mary Kay Ash created other trusts for her remaining children and their descendants.[4]  Originally, she conveyed stock of the family business to each trust, and over time, the assets within these trusts have expanded and diversified.[5]

---

[1] Docket Item ("D.I.") 1.

[2] D.I. 1; Before the oral argument, it was reported by counsel that Richard was purportedly removed from his positions as a director and officer of Mary Kay Holding Corporation on October 22, 2025.  The removal was executed by Ryan, who is both a Petitioner in the Texas Action and the CEO of Mary Kay Holding Corporation, claiming to vote the majority of the corporation's stock in favor of Richard's removal.  Following his removal as a director, the Board of Directors purported to remove Richard from his role as an officer.  However, Counsel acknowledged that this recent development does not affect Mary Kay Holding Corporation's obligation for advancement, of which I agree.  This matter will not be addressed in the opinion as it does not relate to the primary issue at hand.

[3] D.I. 33, Ex. 1 at 11.

[4] *Id*.

[5] *Id*.

Initially, all sixteen family trusts were managed independently.[6] In late 2021, MKHC formed two subsidiaries Golden Rule Management, LLC ("GRM") and Golden Rule Investments, LP ("GRI") to create administrative ease and efficiencies in the management of the family trusts.[7] The Board of MKHC, including Richard, received a presentation and approved the establishment and funding of GRM and GRI.[8] Now, GRM serves as the general partner of GRI, while the family trusts hold limited partnership interests in GRI.[9] GRI, encompasses all sixteen family trusts, including the trust for Richard and his descendants.[10]

In 2023, Richard, while serving as a director and Executive Chairman of MKHC, began investigating issues related to the Golden Rule entities and initiated a series of Section 220 books-and-records demands beginning on December 5, 2023, with additional demands on December 20, 2023, February 14, 2024, April 17, 2024, November 11, 2024, and December 2, 2024.[11] MKHC responded and produced a significant volume of responsive information.[12]

---

[6] D.I. 16 at 6.

[7] D.I. 33, Ex. 1 at 11.

[8] D.I. 1.

[9] *Id.*

[10] D.I. 16 at 6.

[11] D.I. 41 at 12–13.

[12] D.I. 33.

**B.  The Texas Lawsuit**

Beginning in 2021, Richard and his wife, Nancy, requested substantial monthly distributions from the Richard R. Rogers 1975 Trust (the "Trust"), which the co-trustees approved.[13]  Richard ultimately received approximately 70% of those distributions.[14]  He later demanded additional payments, sparking further disputes over information and trust administration.[15]

On November 1, 2024, the Trust's co-trustees, Richard's son, Ryan T. Rogers ("Ryan"), and Tolleson Private Bank ("Tolleson Bank"), filed a declaratory judgment action in Dallas County, Texas (the "Texas Action").[16]  As per the petition, the co-trustees sought court guidance regarding the administration of the Trust and aimed to ensure they complied with their fiduciary duties to the Trust beneficiaries in light of Richard's increased requests for distributions, which if granted could end up paying Richard hundreds of millions of dollars in additional distributions.[17]

Richard answered and asserted counterclaims, including breach of fiduciary duty and breach of trust against Ryan and Tolleson Bank.[18]  His counterclaims allege,

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] D.I. 33, Ex. 2.

among other things, that Ryan procured MKHC board approval for GRM and GRI based on incomplete information, concealed his sole discretion over GRM distributions, and backdated approvals.[19] Richard seeks relief tied to the co-trustees' conduct and the GRM/GRI structure.[20]

### C. The Advancement Dispute

On November 7, 2024, Richard requested advancement from MKHC for expenses incurred in defending the Texas Action and submitted a written undertaking to repay the company if indemnification proved unwarranted.[21]

On November 25, 2024, after consulting counsel, the board, and its D&O insurers, MKHC agreed to advance Richard's expenses, including an immediate $200,000 retainer, while reserving its rights.[22] However, on December 16, 2024, MKHC reversed course and denied further advancement, asserting that the Texas Action did not arise "by reason of the fact" of Richard's MKHC service.[23]

In the case pending in this Court, Richard seeks summary judgment compelling MKHC to advance his legal fees for the Texas Action.[24] He argues that

---

[19] *Id*.

[20] D.I. 16.

[21] D.I. 33.

[22] *Id*.

[23] *Id*.

[24] D.I. 16.

the Texas Action arises "by reason of" his service as an MKHC director because the Texas petition expressly alleges that he approved the GRM and GRI structure as a board member and because the suit followed his investigation of those subsidiaries in fulfillment of his fiduciary duties.[25]  He also maintains that his counterclaims are defensive and compulsory, and is therefore entitled to advancement of his legal fees related to those claims.[26]

MKHC opposes, contending that the Texas Action is a personal trust dispute unrelated to MKHC.[27]  It argues that no claim in the Texas Action challenges Richard's corporate conduct, disputes the advanceability of the counterclaims, and asserts that Richard has not substantiated the reasonableness of his requested fees.[28]

The Texas Action is currently set for trial on February 23, 2026.[29]

## II.  ANALYSIS

Both parties moved for summary judgment under Court of Chancery Rule 56(c), which allows such judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that

---

[25] *Id*.

[26] *Id*.

[27] D.I. 33.

[28] *Id*.

[29] D.I. 16.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[30]

Typically, the Court must view the evidence in the light most favorable to the non-moving party.[31]  However, when both sides move for summary judgment and neither contends that any material factual dispute exists, the Court treats the motions as a stipulation to decide the case on the merits based on the existing record.[32]

## A.      Advancement Rights Established Under the Corporate Charter

Delaware law interprets the statutory and contractual "by reason of the fact" standard broadly and in favor of indemnification and advancement.[33]  In *Pontone v. Milso Industries Corp.*, the Court of Chancery reaffirmed that a claim arises "by reason of the fact" of one's corporate status if there is a nexus or causal connection between the underlying proceeding and the individual's corporate capacity, and any close question should be resolved in favor of advancement and indemnification.[34] This pro-advancement presumption reflects Delaware's policy of encouraging capable persons to serve as corporate fiduciaries by assuring litigation expense

---

[30] Ct. Ch. R. 56(c).

[31] *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99–100 (Del. 1992).

[32] *See* Ct. Ch. R. 56(h).

[33] *See* 8 *Del. C.* § 145; *see also Pontone v. Milso Indus. Corp.,* 100 A.3d 1023, 1050 (Del. Ch. 2014).

[34] 100 A.3d at 1045–46.

protection when claims bear a sufficient relationship to service in an official capacity.[35]

At the same time, Delaware law strictly construes the scope of advancement proceedings.[36] "While the rights to indemnification and advancement are correlative, they are still discrete and independent rights, with the latter having a much narrower scope."[37] When a charter or bylaw includes a mandatory advancement provision, Delaware courts enforce that provision as a matter of contract and enforce them according to their terms.[38] Ambiguities in advancement provisions are generally construed against the corporation and in favor of advancement.[39]

Applying these principles here, Article IX of the Company's charter provides for advancement subject to the standard "by reason of the fact." Article IX mandates indemnification "to the full extent permitted by the DGCL."[40] The charter's use of the term "advance" and its "to the full extent" formulation reflect Delaware's pro-

---

[35] *See Sun-Times Media Group, Inc. v. Black*, 954 A.2d 380, 404 (Del. Ch. 2008).

[36] *See Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509–10 (Del. 2005).

[37] *Id.*

[38] *See Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102, 106–07 (Del. Ch. 2001), *aff'd*, 788 A.2d 111 (Del. 2001).

[39] *See Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 402–03 (Del. Ch. 2009) (resolving textual uncertainty in an advancement clause to favor the claimant).

[40] D.I. 16 at 17–18.

advancement policy.[41] By expressly committing to advance expenses to the fullest extent permitted, Article IX contractually adopts the causal-nexus standard. Therefore, any textual ambiguities in Article IX concerning scope or eligible proceedings are construed against the Company and in favor of advancement.

### B. Petitioner's Trust-Administration Role in the Texas Action Falls Outside the Scope of the Advancement Right and Therefore Precludes Advancement

"Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings."[42] Advancement under 8 *Del. C.* § 145(e) requires that the underlying "proceeding" be brought "by reason of the fact" that the person is or was a director or officer of the corporation. The Delaware Supreme Court has construed this standard to demand a sufficient nexus or causal connection between the claims at issue and the individual's corporate capacity.[43]

---

[41] *See* D.I. 16; *see also Batty v. UCAR Int'l Inc.*, 2019 WL 1489082, at *9 (Del. Ch. Apr. 3, 2019) ("To create a right to payment of costs and attorneys' fees in advance of final determination of the underlying claims, contracting parties use variants of the word 'advance' or phrases such as 'as incurred.'").

[42] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005).

[43] *See id.* at 204; *see also Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

"Section 145(e), however, expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification and recognizes that advances must be repaid if it is ultimately determined that the corporate official is not entitled to be indemnified."[44] Therefore, "[t]he scope of an advancement proceeding is usually summary in nature and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions."[45]

In *Bernstein v. TractManager, Inc.*, the Court explained that the requisite nexus exists where the use of corporate powers was "necessary for the commission of the alleged misconduct."[46] The Court of Chancery emphasized that the connection can be satisfied without a formal fiduciary label owed to the corporation if the conduct alleged occurred while the individual was acting in his or her capacity as a corporate officer or director.[47]

Delaware courts have recognized that "if there is a nexus or causal connection between any of the underlying proceedings contemplated by section 145(e) and one's official corporate capacity, those proceedings are "by reason of the fact" that

---

[44] *Homestore,* 888 A.2d at 212–13.

[45] *See id*. at 213.

[46] 953 A.2d at 1011.

[47] *Id*.

one was a corporate officer, without regard to one's motivation for engaging in that conduct."[48]   This procedure also assures, for example, that a director receives advancement for defending a claim brought against him because of something he did in his capacity as a director—even though such an action may be filed against him as an individual.[49]

As the court in *Zaman v. Amedeo Holdings, Inc.* stated, "[i]n considering whether a corporate official faces an official capacity claim, the key inquiry is whether the claim depends on a showing that the official breached duties, quintessentially fiduciary duties, he owed to the corporation in that capacity or faces liability due to actions taken in his official capacity."[50]

Here, Richard asserts that Ryan seeks approval for actions taken as an MKHC director related to GRM/GRI in the Texas Action.[51]  He identifies this as the "nexus" between his board service and the Texas litigation.  I disagree.  It is apparent that the Texas action arises from a personal trust dispute concerning the administration of a family trust, beneficiary distributions, and the conduct and performance of the trustees. In advancement cases, "[t]he requisite connection is established 'if the

---

[48] *Homestore*, 888 A.2d at 214.

[49] *See Bernstein*, 953 A.2d at 1013.

[50] 2008 WL 2168397, at *17 (Del. Ch. May 23, 2008).

[51] D.I. 16.

corporate powers were used or necessary for the commission of the alleged misconduct.'"[52]  That is not the case here.  I do not disregard the fact that Richard in his role as director, approved the creation of GRM, however, the pleadings and requested relief in the Texas Action are directed to trust governance, trustee duties, compliance with trust instruments, and not to the management, policies, or affairs of MKHC and its ability to create GRM.

The claims in the Texas Action neither challenge decisions made by Richard in his MKHC corporate capacity nor require proof that he exercised MKHC corporate powers.  There is no allegation that Richard exercised MKHC corporate authority to effectuate the challenged trust-related actions, nor that any purported misconduct required the use of MKHC powers.  At most, the reference to Richard's actions as a director approving GRM and GRI in the Texas Action simply provides factual context for trust administration issues; it does not plead corporate wrongdoing, misuse of corporate office, or breach of corporate duties.

Although the plaintiff also argues that the Texas Action was a result of Richard's investigation into GRM and GRI, the record demonstrates that the Texas Action was not brought in response to the books and records requests but rather was brought in response to Richard and Nancy's extraordinary distribution demands,

---

[52] *Pontone*, 100 A.3d at 1050–51.

objections from other beneficiaries, efforts to remove the corporate trustee, complaints about investments, and concerns regarding whether Richard's demands were voluntary and free from undue influence and not because of the 220 investigations. I also reject the argument that the discovery in the Texas Action supports a showing that Richard's actions as a director and MKHC's actions in creating GRM are the reasons for the Texas litigation.[53]

Lastly, the counterclaims reinforce the trust-centric character of this action as they seek remedies for alleged trustee breaches, not redress for harm tied to corporate acts. Richard contends that the Trustees have threatened to cut off his distributions unless he and his wife provide financial information, they consider irrelevant.[54] These allegations are unrelated to his fiduciary responsibilities at MKHC.

The counterclaims focus exclusively on the management of the Trust and the fiduciary duties of the co-trustees.[55] They include accusations of breach of fiduciary

---

[53] During oral arguments parties referenced specific discovery requests for (1) Requests for Production Nos. 30, 48, 50, 52, and 66, all touching on the performance of Ryan as CEO, boardroom disclosures, and related corporate actions; (2) a subpoena to Deborah Gibbons (a MKHC board member) covering boardroom and director issues; and (3) four nearly identical subpoenas issued to Mary Kay Holding and three board members as third parties, all in the Texas action. While these were the subject of discussion during oral argument, the Court has accorded them no determinative weight in reaching its decision, as they do not bear directly upon the dispositive legal questions presented.

[54] D.I. 33.

[55] *Id*.

duty for not distributing trust funds to Richard, breach of the Trust agreement by Tolleson for failing to disclose information to beneficiaries, and further breaches related to the management of the Trust, among others.[56]

I agree with defendants that, mentions of MKHC are limited to explaining the source of the Trust's assets and the context of dividend reductions that impacted Richard's financial needs. Richard's requests for relief confirm that the Trustee Action is directed at the Trust and the co-trustees, not MKHC, and do not seek to exonerate him from any misconduct in his capacity as an officer or director of MKHC.

Thus, the essential causal link to the exercise of corporate powers or duties is absent. Since Petitioners' claims against Richard in the Texas Action fail to satisfy the standard for advancement of legal fees, the same reasoning applies with equal force to the counterclaims. They do not implicate conduct undertaken in a corporate capacity and therefore do not qualify for advancement under the governing legal framework.

Accordingly, the Petitioner is not entitled to advancement.

---

[56] *Id*.

## III.  CONCLUSION

For these reasons, the Defendant's motion for summary judgment is granted, and the Plaintiff's motion is denied.  The Plaintiff is not entitled to advancement. Judgment shall be entered in favor of the Defendant unless expedited exceptions are timely filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery