**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

February 2, 2026

Richard P. Rollo, Esquire
Travis S. Hunter, Esquire
Alexandra M. Ewing, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Margaret M. DiBianca, Esquire
DiBianca Law, LLC
1201 North Orange Street, Suite 504
Wilmington, Delaware 19801

RE: *Kevin Leiske et al. v. Robert Gregory Kidd et al.*,
C.A. No. 2025-0426-CDW (LWW)

Dear Counsel,

I write regarding the defendants' exceptions to a Magistrate in Chancery's final report.[1] In that Report, the Magistrate held that the plaintiffs are entitled to advancement of the legal fees and expenses they are incurring in several proceedings. For the following reasons, I affirm the Report, albeit on narrower grounds.

---

[1] Telephonic Report of the Magistrate on Cross-Mots. for Summ. J. (Dkt. 67) ("Report").

## I. BACKGROUND

The facts are drawn from the summary judgment record presented to the Magistrate and are largely undisputed.[2]

### A. The Parties and Agreements

Plaintiffs Kevin Leiske, Joseph Christopher Lewis, and Margaret Slemmer are managers of Hard Yaka Ventures GP, LLC (the "GP").[3] The GP is general partner of an investment fund, Hard Yaka Ventures, LP (the "Fund").[4] Defendant Robert Gregory Kidd is also a manager of the GP and the Fund's sole indirect limited partner.[5]

The GP is governed by a Second Amended and Restated Limited Liability Company Agreement (the "GP Agreement"), which provides managers with advancement and indemnification rights.[6] The GP Agreement states that

---

[2] *See* Pls.' Opening Br. in Supp. of Mot. for Summ. J. Regarding Entitlement to Advancement and Fees-on-Fees (Dkt. 30) ("Pls.' Opening Summ. J. Br."); Defs.' Corrected Opening Br. in Supp. of Cross-Mot. for Summ. J. (Dkt. 35) ("Defs.' Corrected Opening Summ. J. Br.").

[3] Verified Am. Compl. for Advancement and Other Specific Performance (Dkt. 11) ("Am. Compl.") ¶¶ 8-10.

[4] *Id.* ¶ 17.

[5] *Id.* ¶ 11.

[6] Defs.' Opening Br. in Supp. of Cross-Mot. for Summ. J. (Dkt. 32) ("Defs.' Opening Summ. J. Br.") Ex. 2 ("GP Agreement").

advancement must be approved by the managers unless the requesting person is a founder.[7]  None of the plaintiffs are founders.

Each plaintiff manager also entered into separate Indemnification Agreements with Kidd personally (and his retirement trusts)[8] in 2024.  These Indemnification Agreements provide mandatory advancement of fees and expenses incurred in proceedings where the manager is involved "by reason of" their "Corporate Status."[9]  They state that these rights are "cumulative and in addition to" any other advancement rights the plaintiffs may have, including under the GP Agreement.[10]

### B.    The Underlying Proceedings

The present dispute arises from a business divorce.  Kidd sought to wind down the Fund and withdraw capital.[11]  The plaintiffs, allegedly exercising their voting rights as managers, blocked his actions, purportedly to protect their performance allocations.[12]  This standoff spawned several legal battles.

---

[7] GP Agreement § 12.3.

[8] The retirement trusts are defendants Pacific Premier Trust Custodian FBO Robert G. Kidd IRA, and Pacific Premier Trust Custodian FBO Robert G. Kidd Roth IRA.  *See* Am. Compl. ¶¶ 12-13.

[9] Am. Compl. Exs. 1-3 ("Indemnification Agreements") § 5.

[10] *Id.* § 8(a).

[11] Am. Compl. ¶ 30.

[12] Defs.' Opening Summ. J. Br. Ex. 29 at Ex. A, 6-7.

First, Kidd caused the Fund's primary limited partner to sue the GP in Nevada.[13] The plaintiffs intervened as defendants due to the allegations against them and "to protect the [GP]'s interests."[14] Kidd then amended the complaint to assert breach of fiduciary duty claims against the plaintiffs.[15] Ultimately, the Nevada court dismissed the claims and held that they should be pursued in arbitration.[16]

Second, the plaintiffs initiated JAMS arbitration against Kidd.[17] They demanded access to the GP's books and records and to prevent further mismanagement by Kidd.[18] They also sought advancement "for all costs and fees . . . incurred by the [plaintiffs] in their role as [m]anagers[.]"[19]

Third, the plaintiffs sued in this court for the GP's books and records pursuant to the GP Agreement.[20] A Magistrate in Chancery stayed the case in deference to

---

[13] Report 12.

[14] Am. Compl. ¶ 33; *see* Defs.' Answer to Pls.' Verified Am. Compl. (Dkt. 25) 8-9.

[15] Defs.' Opening Summ. J. Br. Ex. 13.

[16] *Id.* at Ex. 30 (describing the dismissal).

[17] Am. Compl. ¶ 34.

[18] *Id.*; Defs.' Opening Summ. J. Br. Ex. 8 (arbitration demand).

[19] Defs.' Opening Summ. J. Br. Ex. 8 at 14.

[20] Am. Compl. ¶ 36; *see* Report 24.

the Nevada action.[21]  Exceptions to that stay order are pending before another member of this court.[22]

Fourth, the plaintiffs filed the present case for advancement.[23]  They seek advancement from Kidd personally under the Indemnification Agreements.[24]  They are not pursuing advancement under the GP Agreement in this action.

### C.     The Final Report

The parties cross-moved for summary judgment on the plaintiffs' entitlement to advancement.[25]  The plaintiffs asserted that the Indemnification Agreements mandate advancement because the underlying proceedings implicate their Corporate Status as managers.[26]  They further maintained that the Indemnification Agreements provide rights "cumulative" to the GP Agreement.[27]  The defendants countered that the proceedings do not arise "by reason of" the plaintiffs' Corporate Status because they concern personal financial payouts.[28]  They also insisted that the GP Agreement

---

[21] Defs.' Opening Summ. J. Br. Ex. 18 at 8-9.

[22] Report 13-14.

[23] Dkt. 1.  The plaintiffs filed their amended complaint on May 13, 2025.  Dkt. 11.

[24] Report 15-17; Am. Compl., Prayer for Relief.

[25] Pls.' Mot. for Summ. J. (Dkt. 30); Defs.' Cross-Mot. for Summ. J. (Dkt. 31).

[26] Pls.' Opening Summ. J. Br. 10-12.

[27] Pls.' Answering Br. in Opp'n to Defs.' Mot. for Summ. J. and in Further Supp. of Pls.' Mot. for Summ. J. (Dkt. 39) 6.

[28] Defs.' Corrected Opening Summ. J. Br. 20-22.

is the primary source of advancement, requiring the plaintiffs to pursue advancement from the GP before invoking the Indemnification Agreements.[29]

Oral argument on the cross-motions was heard by Magistrate Wright on December 16, 2025.[30] On January 2, 2026, he issued an oral Final Report recommending that summary judgment be granted in favor of the plaintiffs.[31]

The Magistrate concluded that the plaintiffs are entitled to advancement under the Indemnification Agreements.[32] That is so, he explained, because the claims in the underlying proceedings relate to the plaintiffs' ability to exercise managerial powers.[33] The Report also noted that the Indemnification Agreements grant advancement rights separate from the GP Agreement.[34] The Magistrate awarded the plaintiffs fees-on-fees for successfully prosecuting this advancement action.[35] In doing so, he explained that Section 7(d) of the Indemnification Agreements provides for fees in enforcing advancement rights regardless of the outcome.[36]

---

[29] *Id.* at 28-29.

[30] Dkt. 44.

[31] Dkts. 50, 57.

[32] Report 21, 25.

[33] *Id.* at 23-24.

[34] *Id.* at 31.

[35] *Id.* at 30-31.

[36] *Id.* at 31.

D.    The Exceptions

On January 7, the defendants timely took exception to the Report.[37]   They challenge four of the Report's conclusions: (1) that the plaintiffs are involved in the underlying proceedings "by reason of" their Corporate Status; (2) that the plaintiffs may recover advancement from Kidd without first pursuing it from the GP; (3) that the plaintiffs are entitled to fees-on-fees for this case; and (4) that the plaintiffs would be entitled to fees-on-fees under Section 7(d) regardless of their success.[38]

Consistent with the summary nature of advancement proceedings, I ordered expedited briefing and have endeavored to resolve the exceptions within 30 days of the Report.[39]   Briefing on the exceptions was complete as of January 27.[40]

---

[37] Defs.' Notice of Exceptions to the Magistrate's Final Report (Dkt. 51); *see* Ct. Ch. R. 144(c)(2)(B).

[38] Opening Br. in Supp. of Defs.' Exceptions to Magistrate's Jan. 2, 2026 Report (Dkt. 60) ("Defs.' Opening Exceptions Br.") 2-3.

[39] Dkt. 54.

[40] *Id.*; *see also* Pls.' Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 62); Reply Br. in Further Supp. of Defs.' Exceptions to Magistrate's Jan. 2, 2026 Report (Dkt. 65).  After exceptions briefing was complete, the plaintiffs' counsel informed me that their answering brief contained generative AI (GenAI) errors.  *See* Letter Providing Corrected Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 68); Pls.' Corrected Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 69).  The defendants asked that I "review all prior filings in this Action for accuracy and propose a path forward to remedy the time, expense, and other harms to the Court and Defendants."  Letter in Resp. to Pls.' Letter Regarding GenAI Errors (Dkt. 70).  I have carefully reviewed the briefs and cited case law so that I can issue a prompt ruling on the legal questions before me.  But I retain jurisdiction to determine what remedy, if any, should issue to address the GenAI errors in the plaintiffs' brief.

## II. ANALYSIS

This court reviews a Magistrate's final report de novo.[41] A hearing is unnecessary; the summary judgment record lends itself to a review on the papers.[42]

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[43] Proper interpretation of a contract is a question of law and often suitable for resolution on summary judgment.[44]

Delaware courts enforce contracts as written.[45] When interpreting a contract, the court gives priority to the parties' intentions as reflected in the four corners of

---

[41] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[42] *See id.* (observing that "[i]t is possible . . . to conduct a review de novo on the record").

[43] Ct. Ch. R. 56(c).

[44] *NBC Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) ("[S]ummary judgment is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact. Rather, a determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law.").

[45] *See Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (explaining that Delaware "adheres to the objective theory of contracts[]").

the agreement.[46]  Absent ambiguity, the court will give effect to the plain meaning

of the contract's terms.[47]

### A.     The "By Reason Of" Analysis

The primary question is whether the plaintiffs are parties to the underlying

proceedings "by reason of [their] Corporate Status."[48]   The Indemnification

Agreements define "Corporate Status" to include the status of a person who is or

was a "director, officer, employee, agent or fiduciary" of the indemnitor or any other

enterprise (including the GP) at the indemnitor's request.[49]

Consistent with the policy favoring advancement, Delaware courts interpret

such language broadly.[50]  The phrase "by reason of" requires a "nexus or causal

---

[46] *See GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (holding that, in interpreting a contract, Delaware courts "give priority to the parties' intentions as reflected in the four corners of the agreement").

[47] *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) (noting that language that is "[c]lear and unambiguous" must "be given its ordinary and usual meaning"); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (stating that contractual provisions control "when they establish the parties' common meaning[,]" such that "a reasonable person in the position of either party would have no expectations inconsistent with the contract language").

[48] Indemnification Agreements § 5.

[49] *Id.* § 13(b) (defining "Corporate Status"); *see also* Report 9.

[50] *See VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998) (discussing the legislative history and policy animating Delaware's approach to advancement); *cf. Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *2, *4 (Del. Ch. May 3, 2002) (explaining that indemnification "encourages corporate service by assuring individuals that the risks

connection" between the underlying proceeding and "one's official corporate capacity."[51] It does not require an evaluation into the covered person's subjective "motivation[s] for engaging in" the proceeding.[52]

Regarding the Nevada Action, the connection to the plaintiffs' Corporate Status is undeniable. Kidd sued the plaintiffs for breach of fiduciary duty, alleging they misused their managerial voting rights. Defending against allegations of official misconduct is a paradigmatic case for advancement.[53]

The requisite nexus also exists for the offensive claims in the JAMS arbitration and books and records action. As the Magistrate correctly held, these proceedings involve the plaintiffs' authority as managers, such as their voting and information rights. Advancement is warranted to determine and enforce such rights, which are intertwined with the plaintiffs' Corporate Status.

The defendants argue that the underlying litigation is not "by reason of" the plaintiffs' Corporate Status because the claims seek personal financial

---

incurred by them as a result of their efforts on behalf of the corporation will be met, not through their personal financial resources, but by the corporation").

[51] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[52] *Id.*

[53] *See Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *6 (Del. Ch. June 18, 2002) (describing "a consistent line of authority upholding the contractual . . . advancement . . . rights of corporate officials charged with serious misconduct allegedly inspired by personal greed").

payouts. They rely on *Shearin v. E.F. Hutton Group, Inc.* and *Gentile v. SinglePoint Financial, Inc.* to contend that suits advancing purely personal interests generally fall outside the scope of advancement and indemnification.[54]

Those cases addressed very different situations. In *Shearin*, advancement was denied for a suit to enforce a personal employment contract that had no bearing on corporate duties or power.[55] And in *Gentile*, the plaintiff's personal motivation for suing to obtain shares was determinative since the claims did not involve his corporate authority.[56] Here, by contrast, the underlying proceedings would not exist absent the plaintiffs' roles as managers.

The Report distinguished these cases, in part, by highlighting the differences between the corporate and alternative entity contexts. The Magistrate suggested that the Delaware Limited Liability Company Act affords broader contractual freedom than Section 145 of the Delaware General Corporation Law.[57] Although the LLC Act embodies a strong policy of contractarianism, the phrase "by reason of" is interpreted uniformly across corporate and alternative entity contexts, unless the

---

[54] *Shearin v. E.F. Hutton Gp. Inc.*, 652 A.2d 578 (Del. Ch. 1994); *Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102 (Del. Ch. 2001).

[55] *Shearin*, 652 A.2d at 594-95.

[56] *Gentile*, 787 A.2d at 108-09.

[57] Report 22-23.

parties bargain for a different standard.[58]  I need not decide whether the LLC Act compels a different result than the DGCL because the facts satisfy the traditional "by reason of" test.  As such, I affirm the Magistrate's conclusion without adopting the Report's statutory distinction as necessary to the outcome.

### B.     The Exhaustion Defense

The defendants next contend that the plaintiffs are not entitled to advancement from Kidd since they have yet to exhaust their remedies against the GP.  The Magistrate rejected this argument, holding that the contracts "foreclose any argument that the GP Agreement displaces rights granted by the Indemnification Agreements."[59]  I agree.

The defendants' argument is belied by the Indemnification Agreements' plain text.  The rights provided by the Indemnification Agreements are "cumulative" and "non-exclusive."[60]      The Indemnification Agreements lack an exhaustion requirement or language subordinating Kidd's obligation to that of the GP.  The inclusion of cumulative rights, contrasted with the absence of an exhaustion

---

[58] *See Barr v. Genesis CMG Hldgs., LLC*, 2025 WL 3720720, at *5 (Del. Ch. Dec. 23, 2025) (observing that the "by reason of the fact" standard in an LLC agreement was "comparable" to the standard under 8 *Del. C.* § 145 (citing *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *12 (Del. Ch. Sept. 11, 2015))).

[59] Report 29-30.

[60] Indemnification Agreements § 8(a).

requirement, confirms that the parties did not intend to subordinate Kidd's obligations.[61]

### C. The Fees-on-Fees Issue

Finally, the defendants take exception to the Magistrate's award of fees-on-fees to the plaintiffs for prosecuting this advancement action. The defendants insist that the award was improper and highlight that Section 7(d) of the Indemnification Agreements, which contemplates fees-on-fees regardless of success, is void as against public policy.[62] The Report—in self-described "dicta"—observed that such a provision might be enforceable in the LLC context given the statute's emphasis on freedom of contract.[63]

I need not decide that novel legal issue. Under settled Delaware law, fees-on-fees are awarded to a successful plaintiff in an advancement action to prevent the

---

[61] *Active Asset Recovery, Inc. v. Real Est. Asset Recovery Servs., Inc.*, 1999 WL 743479, at *11 (Del. Ch. Sept. 10, 1999) (applying the maxim of *expressio unius est exclusio alterius* to explain that the exclusion of one term coupled with the inclusion of other, parallel terms "speaks volumes"); *see also* 3 Corbin on Contracts § 552, at 206 (1960) ("If one subject is specifically named, or if several subjects of a larger class are specifically enumerated, and there are no general words to show that other subjects of that class are included, it may reasonably be inferred that the subjects not specifically named were intended to be excluded.").

[62] Defs.' Opening Exceptions Br. 36-38.

[63] Report 31.

victory from being pyrrhic.[64]  Because the plaintiffs succeeded on the merits of their advancement suit, they are entitled to fees-on-fees under Delaware law, consistent with *Stifel Financial Corp v. Cochran*.[65]

I therefore affirm the award of fees-on-fees because of the plaintiffs' success, without reaching the validity of the unconditional fee provision.

## III.  CONCLUSION

The defendants' exceptions are overruled and the Magistrate's Report is affirmed, as set out above.  The plaintiffs are entitled to advancement of fees and expenses incurred in the underlying proceedings under the Indemnification Agreements.  They are also entitled to fees-on-fees in connection with this suit.

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[64] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561-62 (Del. 2002).

[65] *Id.*; *see also Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 179 (Del. Ch. 2003) (awarding fees-on-fees proportionate to the plaintiff's success in prosecuting an advancement action).